STATE EX REL. ELIZABETH A. RINKER v. DISTRICT COURT OF PENNINGTON COUNTY, FOURTEENTH JUDICIAL DISTRICT, AND ANOTHER.[1]

May 16, 1919.

No. 21,345.

**Workmen's Compensation Act — accident arising out of employment — scope of review of evidence.**

1. The finding that the evidence fails to prove that relator's husband came to his death as the result of an accident arising out of and in the course of his employment must be regarded as in effect a finding that he did not die from such cause. The evidence is such that the finding cannot be set aside under the rule announced in State v. District Court of Ramsey County, supra, page 336.

**Same — decedent's statement inadmissible.**

2. The statement made to relator by her deceased husband as to the cause of his sudden illness was rightly excluded.

**Same — harmless error.**

3. The testimony as to the condition a doctor, called to attend the deceased, found him in a few months prior to his last illness seems to bear so little upon the vital issue in the case, that the error in its reception should not reverse the judgment.

Upon the relation of Elizabeth A. Rinker the supreme court granted its writ of certiorari directed to the district court of Pennington county and the Honorable Andrew Grindeland, one of the judges thereof, to review proceedings in that court brought under the Workmen's Compensation Act by Elizabeth A. Rinker, widow of Adolph H. Rinker, as em-

1Reported in 172 N. W. 311.

ployee, against the Hanson & Barzen Milling Company, as employer. Affirmed.

*L. S. Ogden* and *Mead & Bryngelson,* for relator.

*L. N. Foster* and *E. M. Stanton,* for respondent.

HOLT, J.

Certiorari to review a judgment rendered in favor of the defendant in a workmen's compensation proceeding.

Relator's husband, Adolph H. Rinker, a man 52 years old, was head miller for the Hanson & Barzen Milling Company at the time of his death, December 29, 1916. In the forenoon of December 26, he and another man replaced the windows in the mill, removed some days before so as to freeze the flour bugs that had become troublesome. He also moved, on a two-wheel truck, a couple of rollers from the platform or door to a place 20 feet inside of the mill. These rollers were crated and weighed nearly 500 pounds. They were lifted from the ground to the platform. The evidence does not show how this was accomplished. Only one of the three persons who worked with Rinker that day was called to the witness stand. He was called by relator, and testified that Rinker did not help lift the crates to the platform, and that the only thing Rinker did was to move them with the truck, two men assisting by tilting the crates so that Rinker could easily shove the nose of the truck under. Between 11 and 12 o'clock Rinker put on his overcoat and went home. On reaching home he looked stunned, pale and nervous, according to relator's testimony. She was not permitted to state what he said. He stayed home that afternoon, at times lying down. He did not rest well during the night. The next morning about nine o'clock he went to the mill, but returned within two hours looking pale and exhausted. He telephoned to Dr. Heiber who came and attended him. He continued nervous and restless, and at times showed distressed breathing. He was unable to remain in the same position for any length of time, frequently changing, now lying down, now sitting or walking. At five o'clock on the twenty-ninth he collapsed suddenly, and just as the doctor arrived. The death certificate gave acute dilatation of the heart as the cause. There is some dispute whether the attending physician added the words, "caused by violent exercise," which now appear in red ink upon the certificate

filed with the board of health. In April, 1917, relator caused a post mortem to be made upon the body, which had been kept in the vault of the cemetery. This was done without notice or opportunity to defendant to be present. The physicians who made the post mortem gave acute dilatation of the heart as the cause of death, and said that the muscles or tissues of the heart had given way or ruptured. They also expressed the opinion that this could have been brought about by great exertion or strain, a few days before the actual collapse came. The relator testified that prior to December 26 her husband had always enjoyed good health. In this she was corroborated by neighbors. He had worked for the milling company for upwards of ten years.

The chief attack is upon this vital finding viz.: "That the evidence fails to prove that said Adolph H. Rinker came to his death as the result of an accident arising out of or in the course of the deceased workman's employment." Before compensation could be awarded, relator must establish the very fact which the court finds the evidence fails to prove. The finding is not as direct as might be desired, but must be taken to be of the same effect as if it had stated that Rinker's death was not the result of an accident arising out of or in the course of the employment. How, on certiorari, the findings in proceedings under the Workmen's Compensation Act are to be treated by this court, was considered and determined in State v. District Court of Ramsey County, supra, page 336. The findings are not conclusive, but are here reviewed for the purpose of determining whether they are supported by sufficient competent evidence. And the rule guiding us is that, if an impartial consideration of the evidence together with all reasonable and fair inferences will lead reasonable minds to but one conclusion, and that conclusion is the opposite of the one made by the trial court, the finding should be set aside. If the record so shows, we have a case where this court may say an error of law permeates the judgment necessitating a reversal.

Tested by this rule the finding mentioned must be sustained. It is true, acute dilatation of the heart is an accident within the definition of the compensation act, in that it produces at the time "injury to the physical structure of the body," the muscles of the heart being ruptured. It is also often "an unexpected or unforeseen event, happening suddenly and

violently." G. S. 1913, § 8230, subd. h. We have stated the facts and testimony which are favorable to the contentions of relator, and to that we may add that Mr. Farr testified that Mr. Rinker came to the witness' soft drink parlor, in the forenoon of some day near Christmas, and said he did not feel good and inquired for a bottle of beer or brandy, and in the conversation remarked that he got hurt, but did not say how, where or when.

On the other hand, inferences tending to sustain the learned trial court's finding may be drawn from the fact that the one man who worked with Mr. Rinker, both in replacing the windows and moving the rollers, testified that nothing occurred of the nature to produce a strain, nor was there overexertion, or violent exercise on the part of Mr. Rinker; that a 12 year old boy could easily do the trucking Rinker did; that only about ten windows were replaced, and that the work involved no particular effort. Furthermore, Mr. Rinker complained neither to this companion, nor to Mr. Barzen, an officer of the milling company whom he saw on the twenty-seventh, of any hurt received in his work. Mr. Barzen said that when Rinker returned to the mill that morning he stated that after a nice night's rest and a good breakfast he started for the mill and felt fine until reaching the top of the hill when he developed further pain in his chest. If something in the course of his work had happened to make this previously strong and healthy man call his doctor and experience the condition he related to his employer, not to mention the conditions described by relator, we should expect him to refer to it. The officers of the company deny that in the telephone communications, or in any other talk, relator or the doctor ever stated anything concerning Mr. Rinker's receiving a strain or hurt in his work. The court below could also give credence to the opinion Dr. Gambell gave, that had acute dilatation, or rupture of the heart muscles, occurred during his work Rinker would have collapsed at once. There are sudden deaths of apparently robust persons from what is commonly called heart failure where previous premonitions are as insignificant as here, and where no primary contributing cause can be assigned except by way of conjecture. Shortly before Mr. Rinker expired he was sitting up playing solitaire. The doctor who was called on the twenty-seventh of December, thought a few days' rest would restore Rinker to his usual health. In the absence

of any testimony pointing to something in the work which Mr. Rinker was doing on the twenty-sixth, or previously, as an adequate cause for the rupture of the heart muscles and consequent death, we see no way by which, under the rule stated, the finding mentioned should be held by us perverse or unsustained.

Relator relies upon Puhlmann v. District Court of Brown County, 137 Minn. 30, 162 N. W. 678, and State v. District Court of Stearns County, 137 Minn. 318, 163 N. W. 667. The cases are similar in that the injury was to some internal organ, a blood vessel, and might have been caused by some strain in the work. · But in both cases the court below found in favor of the dependants, and this court sustained the findings. It is quite a different proposition to reverse the findings. We may add also that in both the evidence as to the connection between the ruptured or affected organ and the strain of the work of the employee was much more palpable than in the instant case.

The court did not err in excluding what Mr. Rinker stated to his wife concerning the cause of his not feeling well, when he returned from the mill. She comes clearly within the statute, prohibiting persons interested to give conversations had with one since deceased.

It was error to admit the testimony of what Dr. Gambell found when called to treat Mr. Rinker, some months before his death. But we do not see how the testimony received could have influenced the court in any degree on the finding here questioned. And the learned trial attorney for relator seems to place little faith in a reversal upon that ground.

We are constrained to affirm the judgment.