## HELEN GAETZ, AS SPECIAL ADMINISTRATRIX, ET AL., v. CITY OF MELROSE, ET AL.[1]

May 4, 1923.

No. 23,337.

**Death hastened by injury received in course of employment.**

    The evidence in this case is sufficient to sustain a finding that an injury received by a deceased police officer, while in the course of his employment, was a contributing cause of his death.

[1]Reported in 193 N. W. 691.

Upon the relation of the city of Melrose and another the supreme court granted its writ of certiorari directed to the district court for Stearns county and the Honorable John A. Roeser, one of the judges thereof, to review the action of that court in proceedings under the Workmen's Compensation Act brought by Helen Gaetz, special administratrix, against City of Melrose and The Traveler's Insurance Company. Affirmed.

*L. N. Foster* and *J. D. Sullivan*, for relators.

*Donohue & Quigley*, for respondent.

HALLAM, J.

Anthony Gaetz was a police officer of the city of Melrose. On July 5, 1919, while making an arrest, he was violently assaulted, and was injured in the abdomen. During the summer he developed a cancer in the right abdomen. This was discovered late in August. On September 24, 1919, he died. Plaintiff, his widow, made claim for compensation under the compensation act. The trial court found that the cancer was a result of the injury and that as a result of the injury he died. Defendant brought certiorari, and contends that there is no evidence to sustain the decision.

The finding must be sustained, unless the evidence, together with all reasonable and fair inferences, that may be drawn therefrom, can lead reasonable minds only to the conclusion that the finding is wrong. State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133; State ex rel. Rinker v. District Court, 142 Minn. 420, 172 N. W. 311.

The evidence is in substance as follows: Gaetz was 64 years old. Prior to the injury he was in good general health. He never walked lame. After the injury he was distressed, walked lame on his right leg, suffered pain, moaned in his sleep. When the cancer became apparent it progressed very rapidly. Dr. Goehrs attended him from about August 18 to September 5. Dr. Goehrs testified that the growth he saw probably caused death or very easily could cause death. He testified that a tumor or cancer may result from a blow. When asked if, in his opinion, a growth of that kind could be caused by a blow, he said: "It is possible, but not reasonably probable."

Dr. Cross, who took the case September 5, 1919, when asked: "Could this condition   *   *   *   in the abdomen be caused by a blow?" he answered: "It might be a contributing cause." Asked if a growth of that kind could develop from July 10 to September 5, he said "it might be possible." He further said "that a growth of that size and that consistency of a malignant tumor would ordinarily take anywhere from 6 weeks to 3 months to develop." Asked if there was a reasonable probability that the injury was the cause of the origin and growth of this cancerous growth, he said: "I should have to answer no to that;" that the best he could say that "it is possible that it might happen." He said, however, in substance, that if there is a cancerous growth started, and a blow like that, it might increase the growth already started. Asked if it would produce death quicker he answered: "Yes, sir, presumably by hastening the progress of the growth it might do that." He further said: "If you have got a malignant growth already present and you have an injury on top of that, I should say it was more likely to hasten progress than the same blow would be to start the original growth."

On further examination Dr. Cross was confronted with a letter written by him, in which he had said: "This patient had a very severe blow directly over the part which was later affected by a tumor some four months before he died. In my opinion, this blow might easily have been a contributing cause to his death." On the stand he confirmed the opinion in that letter. In explaining his letter, and in answer to a question whether the word "might" was intended to emphasize that it was barely a possibility and not a reasonable probability, he said: "If you mean by reasonable probability that it means it is more likely to be so, I should say no, but it might, and we have to consider that it is possible that that blow might easily have contributed to his death," and in final explanation he said, "taking his history   *   *   *   that being assumed, in my opinion a blow such as I understood he had, might have contributed, easily have contributed to cause his death." Had the opinion stated in Dr. Cross' letter stood as his sole testimony, we should have little hesitation in sustaining the finding. The question is, did the doctor's

other testimony destroy the force of this expression of opinion. Our judgment is that Dr. Cross' testimony, taken in connection with the fact that there was no symptom of this disorder prior to the injury, sustains the inference that the injury was a contributing cause of decedent's death.

The trial court found in substance that the injury caused the cancer and that his death was caused thereby. Even though the cancer was pre-existent, we think the judgment may be sustained if the evidence is sufficient to establish the fact that the injury aggravated it and so was a contributing cause of his death. Hogan v. Twin City A. T. Estate, supra, page 199. We are of the opinion that the evidence is sufficient for that purpose.

Judgment affirmed.