## ROSE MAXON v. SWIFT & COMPANY.[1]

### March 28, 1924.

### No. 23,833.

**Compensation act—death caused by accidental injury.**

A workman afflicted with arteriosclerosis was injured by falling and striking a concrete floor with the back of his head. He died 15 months later, the immediate cause of death being a severe hemorrhage in the brain. There was evidence tending to show that when he fell his skull was fractured, a slight hemorrhage in the brain followed and that the fatal termination of his disease was hastened by the accidental injury to his head. The Industrial Commission found that death was caused by the accidental injury. Under the evidence, the finding cannot be held to have been the result of speculation and conjecture.

Upon the relation of Swift & Company the supreme court granted its writ of certiorari directed to the Industrial Commission to review its order awarding compensation in a proceeding under the Work-

[1]Reported in 198 N. W. 133.

men's Compensation Act brought by Rose Maxon, widow and dependent of John J. Maxon, employe, against relator, employer. Affirmed.

*Barrows & Metcalf,* for relator.

*John Keefe,* for respondent.

LEES, C.

Certiorari to review an order of the Industrial Commission awarding compensation to the respondent for the death of her husband.

On October 4, 1921, while employed in the relator's packing plant, the deceased was accidently injured and was never able to resume work. He was paid full compensation until January 1, 1923, when he died.

Respondent's application for additional compensation was resisted on the ground that death was not a result of the accidental injury. The deceased fell about 8 feet, striking the concrete floor under the elevator in the building where he was employed, injuring his back and head. The referee found that death was caused by these injuries, the commission adopted the finding, and relator has brought the record here to have the finding reviewed.

The limits of the inquiry, when the commission's findings are challenged in this court, have been repeatedly stated. The cases are cited in Schoewe v. Winona Paint & Glass Co. 155 Minn. 4, 191 N. W. 1009. Unless we can say that a finding is clearly and manifestly contrary to the evidence, we have no right to set it aside.

Respondent introduced evidence tending to show that the deceased was always healthy before he was hurt, but never regained his health. He no longer had control of his legs and fell down on many occasions. He complained of dizziness, pain in the back of his head, and of black specks floating before his eyes. One of the lumbar vertebrae was fractured, and it was for this injury only that he received medical treatment. A lump on the lower portion of the left side of the head showed where his head had been injured.

To ascertain the cause of death, an autopsy was performed by Dr. Kramer, who found that there had been a recent hemorrhage in the brain, that the arteries had hardened, and that there was a

general sclerosis, which had reached an advanced stage prior to the accident and was the predisposing cause of the hemorrhage from which death resulted. The hemorrhage occurred in the lower left section of the cerebellum, the region where the lump on the head appeared after the accident. The body was placed in a cemetery vault, where Dr. Larson examined the skull. Neither the date of the examination nor the state of preservation of the body is shown by the doctor's testimony. The skull had been divided and the brain removed. An examination of the inner surface of the skull disclosed a fracture of the lower left wall. This was where the lump had appeared as already stated. Dr. Larson was unable to state when the skull was fractured or whether the fracture was followed by an immediate hemorrhage, but gave it as his opinion that death was caused by the accident.

A medical witness present at the autopsy expressed the opinion that the fatal hemorrhage was hastened by the injury to the head, which tended to develop a weak spot in the blood vessels of the cerebellum.

The medical witnesses for the relator were of the opinion that the long time intervening between the accident and death removed the basis for any inference that there was a causal connection between the injury and death.

It appears from the medical testimony that a blow on the head may cause a fracture of the skull with no internal hemorrhage, or it may cause a hemorrhage without a fracture, and, if there was only a slight hemorrhage, the blood would probably be absorbed; also that a hemorrhage in the cerebellum is likely to be followed by what was termed "inco-ordination" of the muscles. The fact that the deceased lost control of his legs and was dizzy is cited in support of the contention that there must have been an internal hemorrhage at the point where the fracture was found by Dr. Larson, which weakened the blood vessels at that point and induced the final hemorrhage. On the other hand, relator insists that the dizziness and inability to stand upright merely indicated that the arteriosclerosis and high blood pressure had reached the point where dizziness was to be expected regardless of any injury to the head.

If the skull was fractured and a slight hemorrhage followed, the evidence would warrant an inference that the injury contributed to bring about the final hemorrhage. The case would then be one for the application of the rule that the aggravation of an existing infirmity by an accidental injury, occurring in the course of the employment, which accelerates the fatal termination of the disease, gives rise to a claim for compensation, even though the accident would have caused no injury to a normal man. Hogan v. Twin City T. E. 155 Minn. 199, 193 N. W. 122; Gaetz v. City of Melrose, 155 Minn. 330, 193 N. W. 691.

The testimony of Dr. Larson would justify the conclusion that the skull had been fractured. Dizziness and the deceased's inability to retain his balance from and after the date of the accident, under all the evdence, were sufficient indications of a hemorrhage in the brain to warrant the conclusion that one had occurred as a result of the injury. Presumably these were the conclusions the commission drew from the evidence, and, since they were permissible, the ultimate finding as to the cause of death cannot be disturbed.

Affirmed.