## MARY VALERI v. VILLAGE OF HIBBING.[1]

### December 3, 1926.

### No. 25,427.

**Evidence sustained finding.**

1. The finding of the Industrial Commission that a hernia was caused by a workman's attempt to lift a can of garbage is sufficiently supported by competent evidence.

**Death resulted from operation for hernia.**

2. To relieve the hernia, a surgical operation was performed. It was followed by an attack of delirium tremens and the death of the

[1]Reported in 211 N. W. 8.

workman. The commission sustained a finding of the referee that the "operation did set into activity delirium tremens," and that death was the result of the operation and the subsequent complications. *Held* that the finding is supported by the evidence.

Workmen's Compensation Acts, —C. J. p. 123 n. 43.

See note in 19 A. L. R. pp. 104, 106; 28 A. L. R. pp. 207, 208.

*C. G. Anderson,* Village Attorney, and *Lewis & Hunt,* for relator. *Victor H. Johnson,* for respondent.

Lees, C.

Certiorari to review the decision of the Industrial Commission awarding compensation to the respondent for the death of her husband, Marino Valeri.

On November 22, 1924, Valeri was employed by the relator as a garbage collector. Another man drove the garbage wagon and a third man assisted Valeri, but was absent on the day in question. The driver was the only witness of the accident. He testified that, while lifting a can of garbage from the ground to the wagon, Valeri fell with the can, and exclaimed that he had hurt himself, indicating "his hip or down there somewheres."

Valeri continued to work that day and for two or three days thereafter, with the aid of the third man, doing the same work as before.

Valeri's wife testified that when her husband came home on the day of the accident he complained of pain, but did not consult a physician until 10 or 15 days later although he continued to feel badly; that he did not think he was ruptured; that he did not work much but "would give his time in" and then come home and stay in the house.

Valeri drew his wages for 15 days after November 22nd, and a witness in a position to know the facts testified that he continued to

work until the team and wagon were "laid off." On December 10th he consulted a physician, who discovered that he had a right inguinal hernia. An operation to reduce the hernia was performed on January 6, 1925. When Valeri entered the hospital where the operation was performed, he had a marked tremor and was extremely nervous. On the 8th of January he became delirious and on the 10th he died. During the last two days of his life he had delirium tremens. He was an Italian by birth, had once been a saloon-keeper and habitually drank wine which he made and kept at home. There is evidence of a somewhat unsatisfactory character that for at least two weeks before he entered the hospital he had been in a state of mild intoxication. While working in a mine before he was employed by the village, he had broken his leg in two places and the leg never fully regained its strength.

Upon this state of facts counsel for relator contend that there was not enough competent evidence to support the finding that the hernia was caused by Valeri's attempt to lift the can of garbage, or the finding that the hernia was a proximate cause of his death.

There was no external evidence of injury and it is urged that it is more probable that the hernia originated from an unknown cause than that the strain of lifting caused it, that Valeri's exclamation when he fell indicated that his injured leg was hurt, and that it is just as reasonable to infer that the hernia was caused by something which occurred after November 22nd as it is to infer that the strain of lifting the garbage can was the source of the trouble.

The testimony of the driver is not full or explicit but, coupled with the proof that Valeri complained of pain after November 22nd and was seemingly unable to go on with his work after a few days had elapsed, it furnished a sufficient basis for the finding in question.

The finding that "the operation did set into activity delirium tremens" and that death was the result of the operation and the subsequent complications is also supported by the evidence.

To those not versed in medical science, the statement that delirium tremens may result from a surgical operation is surprising. The popular belief is that the excessive use of intoxicating liquor is always the cause of the disorder. But the medical witnesses agreed

that the operation and the shock to the nervous system and the pain and suffering which followed were contributing causes to the development of the acute delirium from which Valeri suffered. Granting that Valeri's habitual consumption of wine was a predisposing cause of the attack, nevertheless, if the operation was the proximate cause of his death and the hernia resulted from a strain to which he was subjected when he tried to lift the can of garbage, his dependents are entitled to compensation. State ex rel. Jefferson v. District Court, 138 Minn. 334, 164 N. W. 1012; Hogan v. Twin City Amusement Trust Est. 155 Minn. 199, 193 N. W. 122; Gaetz v. City of Melrose, 155 Minn. 330, 193 N. W. 691; Babich v. Oliver Iron Min. Co. 157 Minn. 122, 126, 195 N. W. 784, 202 N. W. 704; Maxon v. Swift & Co. 158 Minn. 491, 198 N. W. 133, Klika v. Independent School Dist. 161 Minn. 461, 202 N. W. 30.

Counsel for the village rely on McCoy v. Michigan Screw Co. 180 Mich. 454, 147 N. W. 572, L. R. A. 1916A, 323, which holds in effect that if, after a workman receives an injury, he does something which produces an infection which would not have been occasioned but for his own independent act, the original injury is not the proximate cause of the infection and there is no right of compensation. But it was held in Ramlow v. Moon Lake Ice Co. 192 Mich. 505, 158 N. W. 1027, L. R. A. 1916F, 955; McCahill v. N. Y. Transportation Co. 201 N. Y. 221, 94 N. E. 616, 48 L. R. A. (N. S.) 131, Ann. Cas. 1912A, 961, and Sullivan v. Industrial Eng. Co. 173 App. Div. 65, 158 N. Y. Supp. 970, where an attack of delirium tremens followed a bodily injury and death resulted, that the injury was the proximate cause of death, although not of such a nature that the injured man would have died independently of his state of alcoholism, which was such that in and of itself it might have caused death at a later period. The reasoning of these cases is persuasive and they accord with our views more nearly than the reasoning in the McCoy case.

Wine drinking may have had something to do with Valeri's attack of delirium tremens, although it is a matter of common knowledge that people of his nationality are accustomed to the use of wine from childhood and that their use of it does not seem to be attended by any ill consequences. But even if the habit was a predisposing

factor in bringing on the attack of delirium tremens and Valeri's death, nevertheless, if the injury and the operation were material factors in the absence of which death would not have occurred when it did, his dependents are entitled to compensation.

The decision of the commission is affirmed and the respondent allowed an attorney's fee of $100.