New Jersey Department of Labor,
Workmen's Compensation Bureau.

WALTER ZEHRER, PETITIONER, v. H. H. ROBERTSON CO.,
RESPONDENT.

Decided February 10, 1939.

For the petitioner, *George F. Corrigan, Jr.*

For the respondent, *Clarence B. Tippett.*

\*     \*     \*     \*     \*     \*     \*

The issue in the present case may be narrowed down to two questions, namely: (1) Did the petitioner sustain the burden of proving an accident arising out of and in the course of his employment with the respondent? and if so, (2) did the said accident cause the petitioner to suffer a personal injury, resulting in disability, either temporary or permanent, or both?

The first question resolves itself into one of credibility and must be decided in favor of the petitioner. The undisputed facts as developed by the evidence are substantially as follows: The petitioner, an ironworker of many years, was regularly employed by the respondent on the Squibbs job at New Brunswick, at wages of $80 per week. On August 9th, 1937, he was working in the capacity of sling man, and as such, his duties required him to stand upon a pile of steel sheets about fifteen

feet in height and to hook sheets to a hoist which in turn lifted them to the second floor of the building then under construction. Shortly after one P. M. on the above day, while the petitioner was so engaged and while leaning over near the edge of the pile to reach for a water pail which was being returned to him by an electrical worker standing on the ground floor of the building, several of the top sheets skidded off the pile with petitioner aboard and fell to the ground a considerable distance below. From here on there appears to be a sharp conflict in the testimony.

Petitioner testified that during the course of the fall his body grazed a projecting sheet from a nearby pile, scraping his breast and tearing his shirt; but not considering himself seriously injured, he continued to pile the sheets which had fallen with the aid of a fellow worker. About one-half hour after the mishap petitioner noticed that he was bleeding at the site of his left breast which was directly at the point where his shirt had been torn during the fall. Upon the close of the day and when he was about to leave for home he met several ironworkers who noticed blood on his shirt. When he arrived home, upon inspection of his left breast he noticed a laceration on his left breast with the nipple missing, to which he administered an antiseptic. The following morning he was unable to return to work because of the pain in the region of his left breast; however, he journeyed to the job nevertheless and notified Patrick Nelson, the job steward, and requested him to notify the foreman, who had not as yet arrived at work, of the accident. The petitioner never returned to work thereafter on account of his condition. For several days he self-administered to himself with home remedies, and on August 17th, 1937, he received a letter from Dr. William C. Wilentz, the respondent's physician, instructing him to report for treatment. Subsequent thereto the petitioner was treated by Dr. William C. Wilentz, Dr. Edward F. Klein and Dr. Milton Friedman. Petitioner further testified that prior to August 9th, 1937, he had always been in good health and very rarely lost any time by reason of illness. He admitted, however, that he underwent an appendectomy in 1906, suffered from influenza in 1918, and met with an acci-

dent in 1927 when he was struck in the left breast by an object, resulting in a rib fracture, and that thereafter he noticed a little spot or lump formed over the left breast which was present on August 9th, 1937.

Several lay witnesses appeared in behalf of the petitioner and while none of them actually observed the accident, their testimony furnishes a rational inference of its occurrence. Patrick Nelson, the job steward of the ironworkers, testified that he had eaten lunch with the petitioner on the day of the mishap and that the petitioner's shirt was not torn at that time nor was there any blood on it. He testified, however, that he noticed at quitting time, that the shirt which the petitioner was wearing was torn and bloody at the point of his left breast. He further testified that he had known the petitioner several years and that he, the petitioner, had enjoyed very good health prior to the accident and was a good all-around ironworker. He also testified that the Squibb job was not finished on August 9th, or August 10th; but that the petitioner had notified him on the morning of August 10th, 1937, that he would not be able to continue his work because of his injury, requesting that another man be put on in his (petitioner's) place and to notify the foreman of the accident.

Charles Johnson, an ironworker who was working with the petitioner on the day in question, testified that shortly after one P. M. on August 9th, 1937, there was a delay in the hoisting of the sheets and upon looking in the direction of the pile he observed the petitioner standing on the ground with several sheets strewn around him. He further testified that he went to Zehrer's assistance and helped him straighten up the sheets and that he noticed at the time that the petitioner's shirt was torn over the site of his left breast and that there was blood present on his shirt at that point. He testified that he had known the petitioner several years prior to the accident and that the petitioner had enjoyed good health and was a good ironworker prior to the occurrence on August 9th, 1937.

John Timko, also an ironworker, who had been working in the same gang with the petitioner on the day in question,

appeared as a witness for petitioner and corroborated the testimony of Patrick Nelson and Charles Johnson.

Pearl Zehrer, the wife of the petitioner, testified that during the twenty years of married life, petitioner had enjoyed good health prior to the date of the accident and that he had not lost any work as the result of disability or illness during these many years. She also testified that the shirt which he had worn to work on August 9th, 1937, as well as his undershirt, was torn and bloody at the site of the left breast.

The respondent relied solely upon the testimony of Melvin Wines, an electrician employed on the same job, in an effort to disprove the occurrence of an accident within the purview of the act. Wines testified that on the day in question shortly after resuming work following the noon-day recess, he asked the petitioner for a drink from the water pail, and while returning the pail to the petitioner he noticed the petitioner fall to the ground aboard several steel sheets which slid from the pile upon which he was working. He further testified that the petitioner did not injure himself in the fall and that he asked the petitioner and received a reply that he was unhurt.

A careful analysis of these facts lead to the inescapable conclusion that all the necessary elements to establish an accident within the meaning and purview of the Workmen's Compensation act are present. In *Bryant* v. *Fissell*, 84 *N. J. L.* 72; 86 *Atl. Rep.* 458, the rule was laid down which has been generally followed and accepted in this jurisdiction, to wit:

"An accident is an unlooked for mishap or untoward event which is not expected or designed. An accident arises out of the employment when it is something, the risk of which might have been contemplated by a reasonable person when entering the employment as incidental to it. A risk is incidental to an employment when it belongs to or is connected with what the workman has to do in fulfilling his contract; it may be an ordinary risk connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment. An accident arises in the course of employment

if the employe is doing what a man may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time."

Coming now to the second and equally vital question of cause and effect, namely whether or not the said accident caused an injury to the left breast which in turn aggravated a cancerous condition, considerable medical testimony was adduced by the respective parties, much of it containing a definite contrariety of medical opinion.

The undisputed evidence indicates quite clearly that the petitioner, although unaware of the fact, was suffering from a malignant growth in the area of his left nipple long before the occurrence of the accident on August 9th, 1937; that the injury resulting from the said accident consisted of a cut or laceration to the breast tearing away the nipple, thus exposing the open wound to infection and thus rendering the petitioner an easy victim to the ravages of the dreaded disease of cancer.

It is elementary that in order to warrant a recovery under the Workmen's Compensation act it is not necessary that the injury resulting from the accident be the primary and sole cause in initiating the disability; the essential requirements of the statute being fully satisfied if, from the evidence, it appears that the accidental injury, acting as an exciting and co-operative cause, lights up a pre-existing disease, and thereby contributes in the hastening of its culmination in disability or death. *Voorhees* v. *Smith Schoomaker*, 86 *N. J. L.* 500; 92 *Atl. Rep.* 280; *Winter* v. *Atkinson Frizelle*, 88 *N. J. L.* 401; 96 *Atl. Rep.* 360; *Lundy* v. *Brown & Co.*, 93 *N. J. L.* 469; 108 *Atl. Rep.* 252; *Geizel* v. *Regina Co.*, 96 *N. J. L.* 31; 114 *Atl. Rep.* 328

In the Voorhees case, *supra*, the facts were quite similar to those in the instant case; Voorhees, a man over middle age, working in defendant's woodworking shop, at the time of the seizure just preceding his death, was furrowing certain heavy posts, pushing them forward against the knives of the furrowing machine by pressing his abdomen forcibly against the end of the post When he had finished part of them, he sat down evidently in great pain, and died three days later from inter-

nal hemorrhage, which defendant claimed was produced by rupture resulting from cancer. *Held,* that, though decedent was suffering from internal cancer, such facts warranted a finding that the unusual pressure of the posts on parts weakened by disease was the proximate cause of his death, and hence it was caused by an accident arising out of and in the course of his employment, entitling his widow to compensation under the Workmen's Compensation act.

Likewise, in the case of *Cramer* v. *Littell,* 38 *N. J. L. J.* 82, a recovery was had for the death of a workman who suffered from a punctured wound to his tongue caused by a tack, and which subsequently developed into cancer. It appears from the facts that the decedent was an upholsterer and it was customary while working to hold a supply of tacks in his mouth.

In the case of *Geizel* v. *Regina Co., supra,* the court dealt ably with the subject of disease aggravated by an accident. In that case the victim, a chronic sufferer of diabetes, met with an accident consisting of his body being caught between the door and casing of an elevator and pinned there, sustaining crushing injuries to his abdomen and body and thereby exposing him to the ravages of the disease from which he died seventeen days later. Mr. Justice Trenchard, speaking for the Supreme Court, stated the following:

"If we assume that before or at the time of the accident the decedent was suffering from bodily disease, that does not necessarily defeat compensation. Death may be found as having been caused by an accident, although there was a diseased bodily condition prior to the injury without which death would not have ensued, where, as may be inferred here, the undeveloped and dangerous physical conditions are set in motion producing such result."

In other jurisdictions the courts have held similarly, permitting a recovery under the Workmen's Compensation statute for cancer. *Gaetz* v. *City of Melrose,* 155 *Minn.* 330; 193 *N. W. Rep.* 691; *Simpson Co.* v. *Industrial Commission,* 337 *Ill.* 454; 169 *N. E. Rep.* 225, and *Canon Reliance Coal Co.* v. *Industrial Commission of Colorado,* 211 *Pac. Rep.* 868.

In the Gaetz case, *supra,* the decedent was a police officer

for a city. While making an arrest, he was violently assaulted, and was injured in the abdomen. During the summer he developed a cancer in the right of his abdomen. Later he died as the result of the cancer. The trial court found that the cancer was the result of the injury, and that as a result of the injury he died. The evidence tended to show that decedent was sixty-four years of age; that prior to the injury he was in good health, and never walked lame; and after the injury he was distressed, walked lame on his right leg, suffered pain, and moaned in his sleep; that when the cancer became apparent it progressed very rapidly, and that medical testimony was to the effect that the growth or cancer might have been produced by a blow. The court affirmed a judgment for compensation, holding that the injury ultimately causing decedent's death arose out of and in the course of his employment.

In the Simpson Co. case, *supra,* employer was engaged in the structural iron and steel business and claimant's decedent was the foreman supervising certain work of the employer. At the time of the decedent's injury two of the employer's employes were hoisting by means of a block and tackle a steel plate weighing about five hundred pounds. They had it part way up, but it was too heavy for them to handle. Decedent, who was standing by, took hold of the rope, and after giving one pull his hand "crunched down" and slipped. He let go of the rope and put his hand upon his back on the right side and said that he had hurt his back. The evidence showed that prior to the day of the accident he was a strong, vigorous, and active man. He had never been sick and had never required the services of a physician. He was never well after the accident, but grew steadily worse until his death about six months later. Three months before his death X-ray pictures were taken and an operation was performed, which showed a lymphatic sarcoma. There was medical evidence which showed that the sarcoma was the result of the strain or sprain of the muscles of the back. An award in favor of the claimant was affirmed. The court said that if the act of the decedent in pulling on the rope either caused a sarcoma or aggravated or accelerated a sarcoma which already existed,

and his death resulted therefrom, his widow was entitled to compensation and the court could not say that the finding of the Industrial Commission as to the injury and cause of death was contrary to the manifest weight of the evidence.

In the Canon Reliance Coal Co. case, *supra*, claimant's decedent was a coal miner and while engaged in picking up coal and throwing into a car, was struck by a chunk which flew up and hit his cheek. According to his testimony before his death, the cheek did not begin to swell for two or three weeks. Thereafter a malignant growth started in the nature of a carcinoma or cancer, which finally caused his death. Medical testimony was to the effect that cancer sometimes did follow a blow, but not always. The court held that the testimony was sufficient to support findings that the cancer was the proximate result of the blow.

The doctrine of aggravation of a previously impaired physical condition by an accident is exhaustively dealt with in *Corp. Jur.*, to wit:

"The aggravation, acceleration, or lighting up of a pre-existing or latent infirmity or weakened physical condition may constitute a disability of such a character as to come within the meaning of workmen's compensation acts, authorizing compensation for injuries, personal injuries, accidental injuries, accidental personal injuries, injuries from fortuitous accident, or personal injuries by accident, even though the accident would have caused no injury to a perfectly normal, healthy individual. Such acts contemplate latent or dormant ailments; they make no distinction between those having some structural weakness which renders them liable to injury from some unexpected sudden accident. It is not necessary, in order for an employe to recover compensation as an injured workman, that he must have been in perfect health or free from disease at the time he received the injury. Every workman brings with him to his employment certain infirmities; his employer takes him as he finds him and assumes the risk of a diseased condition aggravated by injury. Compensation is not made to depend upon the condition of health of the employe, or upon his freedom from liability to injury through a constitutional weakness or latent tendency;

compensation is awarded for an injury which is a hazard of the employment, and it is the hazard of the employment acting upon the particular employe in his condition of health and not what the hazard would be if acting upon a healthy employe or upon the average employe. If the injury is the proximate cause of his death or disability for which compensation is sought, the previous physical condition of the employe is unimportant and recovery may be had for injury independent of any pre-existing disease." 71 *Corp. Jur.* 603, § 358-5.

"The acceleration, aggravation, or lighting up of a pre-existing disease by an injury may constitute disability of a character such as to come within the meaning of workmen's compensation acts authorizing compensation for injuries, personal injuries, accidental injuries, accidental personal injuries, personal injuries by accident, or personal injuries resulting from a sudden and tangible happening of a traumatic nature, producing a prompt result and occurring from without. Also an injury of a compensable nature may occur where an injury produces some disease which aggravates, accelerates, or lights up a pre-existing disease. So death may be regarded as having been caused by an injury although there was a diseased condition prior to the injury without which death would not have ensued, and partial or total incapacity may spring from, and be attributable to, the injury just as much where undeveloped and dangerous physical conditions are set in motion producing such a result as where it follows directly from a dislocation or dismemberment, or an internal organic change capable of being exactly located. It is immaterial that, if the accident had not occurred, the employe would or might have eventually, but at a later period, been disabled. In accordance with the aforesaid rules, an injury of a compensable nature occurs where the injury accelerates, aggravates, lights up, or is a contributing cause along with a disease such as appendicitis, arthritis, blood poisoning (septicaemia), Bright's disease, cancer, dormant hysteria, gallstones, lymphatec sarcoma, multiple sclerosis, paralysis agitans, pneumonia, tuberculosis, and venereal disease such as syphilis and gonorrhea,

so as to result in death or disability." 71 *Corp. Jur.* 608, § 363-F.

Conceding therefore that Zehrer, prior to the accident, was suffering from a malignant tumor or mass in the region of his left breast, the decisive question for determination is whether the trauma of August 9th, 1937, was a contributing factor in precipitating the diseased condition into a state of activity, necessitating surgical intervention in and about the traumatized area and requiring constant medical attention ever since; or whether the present cancerous condition is the natural result of the disease alone, progressing in its normal course.

Dr. Milton Friedman, cancer specialist and chief of the cancer department of Beth Israel Hospital as well as assistant chief of several other hospitals, and Dr. Max Danzis, chief of the surgical staff of Beth Israel Hospital, testifying in behalf of the petitioner, were of the opinion that there was direct causal relation between the accident and petitioner's present condition. Dr. Friedman testified that the petitioner has been under his professional care since September 13th, 1937; that the wound over the left breast is still unhealed; and that the prognosis is unfavorable. Dr. Danzis testified that he performed an operation upon the petitioner on November 17th, 1937, at the Beth Israel Hospital to correct a condition of cellulitis in the traumatized area involving abscesses in the pectoral muscles of the chest and under the left axilla. In reply to hypothetical question both Drs. Friedman and Danzis stated that the carcinoma, in their opinion, pre-existed the accident, but that the accident was the exciting cause in setting up the inflammation, cellulitis and infection; that these conditions in turn have altered the normal course of the cancer, thereby hastening petitioner's fatal end.

On the other hand, Dr. William C. Wilentz, specializing in surgery and urology, Dr. Arthur R. Casilli, pathologist, Dr. Edward F. Klein, roentgenologist, and Dr. Otto Lowy, a clinical pathologist, appeared in behalf of the respondent and testified in substance, diametrically opposite to the opinions of petitioner's medical experts. In reply to hypothetical questions they stated that the trauma in the chest

played no part in influencing the progress or growth of the cancer. Dr. Wilentz testified that he treated the petitioner at respondent's request from August 23d, 1937, to October 21st, 1937; that he obtained a history of the accident; and that, upon examination, he found a crater-like ulcer over the left breast at the site of the missing nipple. Dr. Wilentz further testified that a biopsy disclosed the condition to be a mammary carcinoma—grade 2; that he believed it to be wholly unrelated to the accident because of its crater-like appearance with the presence of sloughing which is generally characteristic of chronic cancers; and that he referred petitioner to Dr. Klein for a deep X-ray therapy. Dr. Casilli testified that he made a microscopic examination of specimen of tissue taken of petitioner by Dr. Wilentz on October 12th, 1937, which examination revealed the presence of cancer—mammary carcinoma, grade 2. He further testified that the accident in his opinion, neither aggravated nor accelerated the cancer, because this type of cancer is of slow growth and is characteristic in spreading to secondary infection with sloughing and ulcerations. Dr. Klein testified that he rendered one deep X-ray treatment to the petitioner on October 19th, 1937, in accordance with a request of Dr. Wilentz, and that he thereafter referred him to the Beth Israel Hospital of Newark because of convenience to the petitioner whose home is situated in Newark. Dr. Lowy testified that he made two examinations of the petitioner, one on November 27th, 1937, at the Newark Beth Israel Hospital, and one on April 9th, 1938, at the office of Dr. Milton Friedman; that on each occasion he found evidence of an ulcerated type of carcinoma; and that in his opinion there was no causal relation between the trauma and the petitioner's present condition.

There is thus presented a closely balanced question of fact, involving the conflicting opinions of the medical experts of the respective parties. The question, dispositive of the issue, is whether or not sufficient evidence has been adduced to conclude that the accident was a contributing factor in causing the present disability. I am satisfied there is ample competent evidence to support such a conclusion.

After carefully analyzing the entire medical testimony, the conclusion is inescapable that there is in this case an unbroken chain of events revealing a reasonably accurate history of cause and effect, to wit: (1) the pre-existing carcinomal mass in the left breast; (2) the accidental injury to the left breast which tore away the left nipple; (3) the inflammation, cellulitis, and infection of the traumatized area which followed as a direct consequence of the said injury; (4) the changing or altering the carcinoma from a closed one to an open ulcerous one, requiring constant active medical treatment; and (5) continuous incapacity since the accident.

The burden of proof which rests upon the petitioner to establish his right to compensation has been met. Because the limit of medical treatment has not yet been reached, I find that he is entitled to an award of compensation for temporary disability at the rate of $20 per week from the date of the accident until such time that the ulcerous condition has completely. healed, but not, however, to exceed the statutory limit of three hundred weeks. I further find that the petitioner is entitled to his medical, surgical and hospital expenses, costs and allowances of counsel fee.

It is therefore  *  * . *  adjudged, determined and ordered, that judgment final be entered in favor of the petitioner and against the respondent in the sum of $20 per week for a period of seventy-eight and three-sevenths weeks representing temporary disability compensation from the date of the accident to the date of this order, and to continue thereafter at the same rate of $20 per week until such time that the ulcerated wound has healed, but not, however, to exceed three hundred weeks.

*      *      *      *      *      *      *

And it is further. ordered that upon the termination of the temporary disability period, the petitioner may, upon notice to the respondent, apply for final hearing for the purpose of determining the extent of the permanent disability.

JOHN J. STAHL,
*Deputy Commissioner.*