236 P.2d 87 (1951)
In re SMITH.
SMITH et al.
v.
SUNSHINE MINING CO.
No. 7725.
Supreme Court of Idaho.
July 10, 1951.
Rehearing Denied October 12, 1951.
H. J. Hull and Sons, Wallace, for appellant.
E. B. Smith, Walter Oros, both of Boise, for respondent.
TAYLOR, Justice.
On Monday, May 10, 1948, at about 2:00 p. m., Clifford D. Smith died in the underground workings of the Sunshine Mine. At the time of his death he was 40 years of age, apparently in good health, and had been for a number of years engaged in manual labor. He commenced working for the defendant (appellant) on or about December 15, 1947. At that time he was given a "pre-employment examination" by Dr. Cordwell, from which it appeared that his heart was then normal. He reported no history which indicated previous heart ailment and had no record of *88 syphilis. At and prior to the time of his death he was engaged in tramming on the 3400 level. The metal mine car which he used weighed about 350 lbs. and carried about 1500 lbs. of ore. He filled the car by drawing ore from a chute, then pushed the car on a 1% down grade for a distance of about 160 feet (the grade increasing to 1¾% over the last 40 feet) to a grizzly where it was dumped automatically by its momentum and the releasing of the latch by the operator. The empty car was then pushed back to the loading station and the operation repeated. In the course of a normal day's work he trammed 40 to 45 cars of ore. On the 10th, after he had trammed about 18 carloads and at about 1:00 p. m., he went to a place on the same level, a short distance from his tramming run, where two other miners, Wright and Murrill, were timbering, and asked their help in righting his tipped up car. After helping them hoist and place a cap (in which operation he did no lifting, but operated the air valve on the tugger) the three went to right the ore car. The car was loaded and tipped up so that it rested on the front wheels and lower front corner of the box-like body.
There is direct conflict in the testimony of Wright and Murrill as to the manner in which Smith helped to right the car. While they lifted on the front end, Wright lifting on the car body and Murrill lifting on a lagging shoved underneath the car, Smith assisted by bearing down on the rear end. Wright testified that Smith pulled down on a piece of lagging pushed under the back end of the body of the car, while Murrill testified that he grasped the upper rear end of the body of the car with both hands and stepped on the lower rear end with his right foot, and then when the helpers hollered "ready", Smith stepped up, adding his weight to the back end of the car. On this point the Board found as follows: "Wright and Murrill lifted on the front end of the car. Murrill used a lagging, and Smith grasping the top of the rear end with both hands, and placing his right foot on the rear of the car. When his helpers `hollered ready' Smith stepped up, lifting his weight off the ground, raised himself up and added his weight to the tipped-up rear end. The righting operation took less than a minute." After the car was straightened up Smith appeared to be "all right" and went about his tramming and the two helpers returned to their own work. At about five minutes before two o'clock, Wright and Murrill, on leaving their work at the end of the shift, found Smith lying on a battery bench a short distance from his tramming run, in a dying condition. His face was black, his pulse weak and he was gasping his last breath.
The tipping of the loaded ore car, in the manner in which this one did, was not a frequent occurrence, one witness saying it happened "occasionally" and another "very seldom".
There is also a conflict in the testimony as to the amount of exertion put forth by Smith in righting the car. It appears from defendant's Exhibit "H", a scale drawing of the tipped up car, prepared by an engineer in the employ of the defendant, that nearly all of the weight of the load and most of the weight of the car rested forward of the front axle, which was the fulcrum point upon which the weight must be pivoted in straightening the car. This would mean that the total weight lifted would be more than 1500 lbs., corroborative of the testimony of Wright, who testified "It takes all that three men can put out to get it back." It also appears from this scale drawing that the point, where Smith was said to have put his right foot on the rear of the car, would be approximately 34 inches above the ground where he stood and that the top edge of the car which he grasped with his hands would be approximately 32 inches forward from the up-ended rear corner where he put his foot and four feet four inches above the ground or floor of the tunnel. From these physical facts it becomes at once apparent that it would be a rather difficult feat for Mr. Smith to step up to add his weight to the up-ended car without at the same time exerting considerable pull with his outstretched arms to assist in raising his weight. Mr. Smith was approximately five *89 feet, nine inches tall and weighed 165 to 170 lbs.
Dr. Wood, witness for the claimant, from a hypothetical statement of the facts, testified that the cause of death was "heart strain very possibly resulting in a coronary block" and that "the type of work he had been doing there would more than likely have a direct relationship, the episode of the tipping up of the car and the righting of it," and "culminated by that, but the man's whole employment, that experience, you could think of it as being the last straw." On cross-examination the doctor testified that in reaching his conclusion he gave considerable weight to the fact as stated in the hypothetical question that Smith "pulled down" on the back of the car and that if all he did was to stand on the back end and add his weight that that would not cause the heart strain. On redirect the doctor testified that pulling down with the arms extended above the head or above horizontal is "one of the quickest things that will produce an attack of angina * * *. That is the condition that has a great deal to do with the development of an angina."
The Board did not specifically determine whether he pulled down or not. On the point of exertion its finding is "it was something more than routine."
Dr. Mowery, who was also the county coroner and who examined the body shortly afterward, testified that the cause of death apparently was heart trouble, and that on the death certificate executed by him he listed the cause as "apparently heart failure and alcoholism probably".
Dr. Cordwell testified for the defendant that he does not believe that Smith's work or the righting of the ore car precipitated or caused his death; that coronary occlusion generally occurs while the patient is at rest and that most attacks are not preceded by unusual strain or exertion. On cross-examination Dr. Cordwell testified that death does not always follow suddenly, depending upon the type and extent of the heart ailment; and that although most thrombi form quite rapidly, it is possible, according to some authorities, for a thrombus to form within one to 24 hours.
There was evidence that Smith had been "on a binge" or "on a drunk" for about four days which ended about ten days before his death, and that he had been drinking over the week end of May 8th and 9th; that he showed some effects of the drinking on the morning of the 10th when he came to work, and after entering the mine slept for about two hours before beginning work. Dr. Wood was positive in his testimony that there was no connection between the use of alcohol and his death, and referred to alcohol as a preventative for coronary.
The Board found that "the cause of Smith's death was a coronary occlusion or coronary block, primarily due to a heart strain. The heart strain was due to the physical exertion and movements normally required in his regular work, with some added stress in performing speedier work to fill his average quota of cars to be trammed on one shift, and also some added stress in righting his accidentally up-ended car about an hour before his death." And as to alcohol, that the strain came at a time when his system was recovering from exhaustion from drinking alcoholic liquor. From this the Board concluded that while the use of alcohol probably contributed to the death, it was not the sole or principal factor and that, therefore, the defendant was not entitled to exemption from liability by reason thereof. This ruling is correct. § 72-202 I.C.; Anno. 19 A.L.R. 95 at 106; Valeri v. Village of Hibbing, 169 Minn. 241, 211 N.W. 8, 60 A.L.R. 1296.
The Board further concluded that the tipping of the tram car was an accident and that the accident contributed in some degree to the injury and resulting violence to the physical structure of the body of the deceased. Whether the tipping and righting of the car is to be regarded as the "accident" or whether the heart strain in righting the car is taken to be the "accident" we do not regard as a matter of decisive importance. Certainly the resulting heart strain under the circumstances would be an unexpected, undesigned, and unlooked for mishap. It is the causal connection between the accident and the injury, in this case the death, that *90 is controlling. As stated, the Board found that the exertion in righting the car was a contributing factor to the heart strain.
Appellant's assignments challenge specific findings on the ground that they are not supported by the evidence, and contend that the findings and conclusions do not support the award. This court being limited to a review of questions of law, Const. art. 5, § 9, the ultimate question is the sufficiency of the evidence as a matter of law. Following the rule of liberal construction of the Workmen's Compensation Law, this court has consistently held that where the findings and conclusions of the Board are supported by any competent and substantial evidence, such findings and conclusions will not be disturbed. McNeil v. Panhandle Lumber Co., 34 Idaho 773, 783, 203 P. 1068; Cain v. C. C. Anderson Co., 64 Idaho 389, 409, 133 P.2d 723; Gragg v. Cook Cedar Co., 64 Idaho 50, 127 P.2d 757; Clark v. General Mills, 65 Idaho 742, 152 P.2d 895; Warlick v. Driscoll, 68 Idaho 552, 200 P. 2d 1014. It is a question of law for this court to determine whether or not there is substantial and competent evidence in the record, which, if believed and given its maximum weight, will sustain the award. If upon an examination of the record such evidence is found, then the award must be affirmed.
It must also be noted that while the burden is on the claimant to prove the essential elements of her claim, she is not required to prove the exact cause of death. It is sufficient if she has proved the probable cause. Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399; Nistad v. Winton Lumber Co., 59 Idaho 533, 85 P.2d 236; Golay v. Stoddard, 60 Idaho 168, 89 P.2d 1002; Hamlin v. University of Idaho, 61 Idaho 570, 104 P. 2d 625; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Stralovich v. Sunshine Mining Co., 68 Idaho 524, 201 P.2d 106; Crenshaw v. Pendleton Mfg. Co., 215 S.C. 66, 54 S.E.2d 61.
We conclude that the evidence in this case is sufficient to meet these requirements. The order of the Board awarding benefits to the claimant and the minor child is affirmed. § 72-201 I.C. In re Larson, 48 Idaho 136, 279 P. 1087; Fealka v. Federal Mining & Smelting Co., 53 Idaho 362, 24 P.2d 325; In re Soran, 57 Idaho 483, 67 P.2d 906; Evans v. Cavanagh, 58 Idaho 324, 73 P.2d 83; Potter v. Realty Trust Co., 60 Idaho 281, 90 P.2d 699; Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020; Aranguena v. Triumph Min. Co., 63 Idaho 769, 126 P.2d 17; Cain v. C. C. Anderson Co., 64 Idaho 389, 133 P.2d 723; Bishop v. Morrison-Knudsen Co., 64 Idaho 806, 137 P.2d 963; Cameron v. Bradley Mining Co., 66 Idaho 409, 160 P.2d 461; Teater v. Dairymen's Co-op Creamery, 68 Idaho 152, 190 P.2d 687; Warlick v. Driscoll, 68 Idaho 552, 200 P. 2d 1014; Brown's Case, v. Nelson Co., 123 Me. 424, 123 A. 421, 60 A.L.R. 1293; Crispin v. Leedom & Worrall Co., 142 Pa. Super. 1, 15 A.2d 549; Devlin v. Department of Labor and Industries, 194 Wash. 549, 78 P.2d 952; Earhart v. Wible Ice & Cold Storage Co., 150 Kan. 695, 95 P.2d 366.
GIVENS, C. J., and PORTER, and THOMAS, JJ., concur.
KEETON, Justice (dissenting).
Subsequent to the filing of the opinion in this matter, which affirmed the decision of the Industrial Accident Board awarding compensation, the appellant filed a petition for rehearing, and on a re-examination of the issues presented, I have concluded that the order appealed from should be reversed.
The decedent's death was not caused by an accident coming within any definition either recognized by the common law or as defined in the Workmen's Compensation Act.
Before a workman or his dependents are entitled to compensation under the Workmen's Compensation Act, there must be an accident causing the disability or death.
An accident means: "* * * an unexpected, undesigned, and unlooked for mishap, * * * happening suddenly and connected with the industry in which it occurs, *91 and which can be definitely located as to time when and place where it occurred, causing an injury * * *. * * * `injury' and `personal injury,' * * * shall be construed to include only an injury caused by an accident, * * * which results in violence to the physical structure of the body. * * *" Sec. 72-201 I.C.
The tipping of the car as outlined in the majority opinion may or may not have been an accident, but whether it was or was not, such tipping did not result in violence to the physical structure of the decedent's body. There was no testimony from which the Board could conclude that there had been an accident causing injury, or warrant the conclusion that decedent died the result of "an untoward, unforeseen or unexpected event or series of events causing an injury". The expert testimony does not support such a conclusion.
The burden of proving an accident was on the claimant. An absence of evidence does not meet the requirement.
In Wade v. Pacific Coast Elevator Co., 64 Idaho 176, 129 P.2d 894, a much stronger showing was made than is presented here. This court concluded that the decedent did not come within the provisions of the Workmen's Compensation Act.
In Sonson v. Arbogast, 60 Idaho 582, 94 P.2d 672, this Court held that: "* * * in absence of showing that there was some noticeable mishap, fortuitous incident, or sudden or manifest change in working conditions" there could be no recovery, and in Walters v. City of Weiser, 66 Idaho 615, 164 P.2d 593, held that where an electrician with a weak heart contracted influenza and continued to work and died with rheumatic heart disease complicated by influenza, such condition did not meet the requirement that there must be an accidental injury.
In Hoffman v. Consumers Water Company, 61 Idaho 226, 99 P.2d 919, this court held that typhoid fever contracted while on the job was not an accident.
The Board did not find that the decedent suffered some noticeable mishap or fortuitous incident connected with the employment from which the injury complained of resulted, and the finding of the Board that decedent died the result of an accident is a conclusion supported by no evidence whatsoever. Conclusions of law cannot take the place of findings of fact.
There being an entire absence of evidence to connect the alleged accident with the injury suffered should only result in a reversal of the Board's conclusion.