New Jersey Department of Labor,
Workmen's Compensation Bureau.

FRANCES YAWDOSHAK, PETITIONER, v. THE SOMER-
VILLE IRON WORKS AND NEW JERSEY MANUFAC-
TURERS CASUALTY INSURANCE CO., RESPONDENTS.

Decided October 5, 1942.

For the petitioner, *David Roskein.*

For the respondents, *George E. Meredith* (*William J. McNulty,* of counsel).

\*   \*   \*   \*   \*   \*   \*

The only controversial issue here presented for determination is whether or not the death of Alex Yawdoshak on November 24th, 1941, resulted from an accident that arose out of and in the course of his employment with the respondent company. The jurisdictional factors such as notice, dependence and rate appear to be undisputed.

For the proper determination of the basic issue involved in this case, it becomes necessary to review the circumstances of the decedent's employment and activities immediately preceding his death.

The evidence discloses that Alex Yawdoshak, age 56, had been employed as a laborer by the respondent at its plant in Somerville, New Jersey, for a period of upwards of nine years. His duties, in the main, consisted of loading a truck with pig iron and scrap iron, preparatory to smelting in the cupola where the said iron was smelted. The decedent was accompanied in this work by four other laborers. His work required him to bend down to the floor and raise metal bars

weighing from five pounds to several hundred pounds and placing them in the said truck. The lighter bars were picked up by the decedent alone. He was assisted in lifting the heavier bars. It took approximately one-half hour to load the said truck to its capacity of 4,000 pounds. It would thereupon be pushed by the said laborers who had loaded it, through the yard and to the cupola. The roadway was partially uphill and partially downhill. The testimony discloses that the truck was pushed along tracks, and upon going up the incline, it was necessary that five or six men participate in the effort. On the down grade, two men were sufficient to direct its course. The decedent's employment commenced at 8 o'clock. On alternate days he was required to use a sledge hammer in the mornings to break up the slag. On the day in question it was his partner's day to perform this work.

The decedent had left his home at about 7 o'clock, having had his breakfast, and appearing to his wife to be in usual, normal health. With the exception of a hernia which he had sustained in 1939 and a foot injury, for which he had been treated by the respondent's physicians seven years prior thereto, he had suffered from no serious ailments. On arrival at work at about 8 o'clock he went about his usual routine and by 10 o'clock the decedent and his fellow workers had loaded and moved to the cupola approximately twenty tons of iron. At about ten minutes prior to his death he complained to a fellow workman of a tightening sensation in his chest. He stopped work and rested. A glass of water was served him in an endeavor to relieve his symptoms. After a short period of rest, the decedent and his partner, John Surowicz, endeavored to push a loaded truck. They had gone about ten feet when the decedent was seen to fall backwards on an empty car, which was in the vicinity, dead. Dr. Edgar Flint, the county physician, was notified, and after examining petitioner, made a diagnosis of "heart disease, unclassified." There seems to be no dispute that the petitioner, at the time he suffered his original coronary symptoms, was in the performance of the heavy and arduous labor of the

morning. Similarly, his final collapse occurred while he was in the very act of pushing the truck which had been loaded with scrap. There seems to be no substantial contradiction that the work which the decedent was engaged in during the morning on which he met his death was heavy, laboring work. Respondents' counsel's attempt to characterize the work as "not as heavy as work done by the decedent previously" and as "not hard work" and "work nothing out of the ordinary," does not impress me. Neither does the characterization of Dr. Andrew Ruoff and Dr. J. Allen Yaeger that moving scrap iron by the decedent was not unusual to the decedent and therefore played no part in bringing on his death, because he had accustomed himself to this work. Their opinion that 60% to 80% of coronary deaths are brought on without effort forms no basis or criteria to dissociate the circumstances of this case with the coronary death at the time at which it occurred. The testimony of Dr. J. Allen Yaeger is far from convincing. His attempted explanation that there was no causal connection between the effort expended by the decedent and his death, because the effort was not unusual, has not been held tenuous by our courts. I need hardly cite the numerous authorities which have held that this does not correctly form the basis of compensability. His further inconsistency when confronted with his attempted characterization of the initial coronary occlusion suffered by the decedent and his criteria of elements necessary to establish a causal relationship between effort and strain fails to impress the court, and, under the circumstances, can hardly be accepted by it as a basis in the proper consideration of this case.

The court finds, as a fact, that the work which the decedent had been doing was arduous and required considerable effort. This is especially true under the circumstances disclosed from the testimony.

There appeared on behalf of the petitioner, Dr. Rossi. He had occasion to treat the decedent during the early part of November for symptoms which he diagnosed as a head cold with slight bronchitis. The doctor found no cardiac symp-

toms during the period of his treatment. I feel that the testimony of Dr. Jerome G. Kaufman, eminently qualified in this field, deserves considerable weight. It was the doctor's opinion that the effort and exertion expended by the decedent during his laborious activities on the morning in question was a competent producing cause of his death. He based his opinion on the facts as set forth in a hypothetical question which was given him for that purpose. It was the doctor's opinion that the effort and strain which the decedent was undergoing, produced the coronary occlusion, resulting in a cardiac death at the time when it occurred. It was his opinion that the decedent first manifested evidence of the onset of his cardiac condition at the time when he felt the tightening sensation in his chest. I feel that the effect of his going back to work after the initial attack and endeavoring to push the loaded car resulted in his subsequent collapse and death. The decedent's heart, previously weakened by the damage done at the time of the onset was further aggravated and accelerated by his endeavor to complete his daily work. The effort and strain which he then attempted was greater than that which his heart was, at that moment, able to withstand. This clearly is a compensable condition. The testimony establishes to my satisfaction that a partial occlusion occurred about fifteen minutes prior to the decedent's death, at the time when he felt the tightening sensation in his chest, which, in view of the chain of events which followed, and his endeavor to further exert himself, became complete at about 9:50 A. M.

I feel that but for the occurrences enumerated and the employment of the morning of November 24th, 1941, in the course of his work, the decedent would not have suffered an acute coronary occlusion when he did, and died as a result thereof. In my opinion the medical proofs offered by the respondents fail, in the light of the circumstances, to outweigh the value of the factual and medical testimony offered by the petitioner in support of the contrary conclusion.

To attribute the coronary occlusion solely to the degenerative process which, apparently by coincidence, occurred at a time immediately following a considerable degree of physical

exertion on the part of the decedent, but, according to the respondent, was wholly unrelated to the employment, is to ignore the more reasonable and more probable explanation presented by the petitioner's evidence. It is to be borne in mind that the test under our cases is probability and not absolute medical certainty. *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, 111 *N. J. L.* 487; 170 *Atl. Rep.*, 22; *Hercules Powder Co.* v. *Nieratko*, 113 *N. J. L.* 195; 173 *Atl. Rep.* 606; *affirmed*, 114 *N. J. L.* 254; 176 *Atl. Rep.* 198. Accordingly, I am constrained to accept the testimony and proofs of the petitioner in this regard.

In determining whether or not an accidental injury has been suffered within the meaning of the act, it should be observed that it need not be the result of traumatic force. *Bernstein Furniture Co.* v. *Kelly*, 114 *N. J. L.* 500; 177 *Atl. Rep.* 554; *affirmed*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832; and the fact that the injury was accidental may legitimately be inferred from circumstantial evidence. *De Fazio's Estate* v. *Goldschmidt*, 87 *N. J. L.* 317; 88 *Atl. Rep.* 705. Nor need there be any exertion or stress out of the ordinary, where the performance of manual labor entails a strain upon an underlying diseased condition of the employee's anatomy, in consequence of which death occurs. *Molnar* v. *American Smelting and Refining Co.*, 127 *N. J. L.* 118; 21 *Atl. Rep.* (2d) 213.

Recognizing, as our cases do, that reasonable probability and not absolute medical certainty is the test to be applied in compensation cases, *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, *supra*, and all that is required for the petitioner to prevail is that the claimed conclusion from the facts be a probable or more probable hypothesis with reference to the possibility of other hypotheses, *Belyus* v. *Wilkinson Gaddis Co.*, 115 *N. J. L.* 43; 178 *Atl. Rep.* 181; *affirmed*, 116 *N. J. L.* 92; 182 *Atl. Rep.* 873. I am satisfied that the petitioner's evidence in the instant case more than meets the burden of proof which is hers.

The real question involved in this litigation has recently received the attention of our Court of Errors and Appeals,

as well as the Supreme Court. *Molnar* v. *The American Smelting and Refining Co.*, 128 *N. J. L.* 11; *24 Atl. Rep.* (*2d*) 392; *Ciecwirz* v. *Public Service Electric and Gas Co.*, 128 *N. J. L.* 16; *24 Atl. Rep.* (*2d*) 394; *Passafiume* v. *H. T. Heinz, Inc.*, 128 *N. J. L.* 27; *24 Atl. Rep.* (*2d*) 394. Those decisions have reaffirmed the principles enunciated in the earlier cases "that a compensable accident is made out upon a showing that there was a causal relation between the stress, strain and exertion occasioned by the petitioner's work and his eventual disability or death." This particularly, where there existed an underlying diseased or weakened condition of the heart. *Bernstein Furniture Co.* v. *Kelly*, 115 *N. J. L.* 500; *180 Atl. Rep.* 832; *Hentz* v. *Janssen Dairy Corp.*, 122 *N. J. L.* 494; *6 Atl. Rep.* (*2d*) 409; *Ciocca* v. *National Sugar Co.*, 124 *N. J. L.* 329; *12 Atl. Rep.* (*2d*) 130. Nor is the degree of exertion of any consequence, so long as the performance of the required work caused a strain upon the heart. *Molnar* v. *American Smelting and Refining Co., supra; Niemi* v. *Thomas Iron Co.*, 20 *N. J. Mis. R.* 197; *26 Atl. Rep.* (*2d*) 494; *Barcalow* v. *Board of Education of Borough of Caldwell*, 14 *N. J. Mis. R.* 718; *187 Atl. Rep.* 32. However, whether the work the petitioner was doing be characterized, as "effort expended," or "extra strain," or "exertion of the moment," so long as there was a causal relationship between the employee's work and his disability, then his disability was the result of an accident arising out of and in the course of his employment. *Ciecwirz* v. *Public Service Electric and Gas Co., supra.*

My careful consideration of the proofs adduced, and all reasonable inferences deducible therefrom, convinces me that the petitioner has adequately established, factually and legally, that decedent met with an accident on November 24th, 1941, which arose out of and in the course of his employment with the respondent. Accordingly, she is entitled to the statutory dependency compensation.

\*　　\*　　\*　　\*　　\*　　\*　　\*

It is, therefore, \* \* \* ordered that judgment be entered in favor of Frances Yawdoshak, the petitioner, and against

418

The Somerville Iron Works and New Jersey Manufacturers Casualty Insurance Co., the respondents, in accordance with the foregoing.

HARRY S. MEDINETS,
*Deputy Commissioner.*