(No. 7266.   December 20, 1945.)

LILLIAN M. WALTERS, as the dependent surviving widow on her own behalf and on behalf of SHIRLEY ANN WALTERS, PATRICIA RAE WALTERS, RICHARD H. WALTERS and ROBERT R. WALTERS, as the dependent surviving minor children of Ray Walters, Deceased, Appellant, v. CITY OF WEISER, IDAHO, Employer, and STATE INSURANCE FUND, Surety, Respondents.

[164 P. (2d) 593.]

George Donart and E. B. Smith for appellant.

Walter M. Oros for respondents.

AILSHIE, C. J.—January 13, 1945, Ray Walters, husband of Lillian Walters and father of four dependent children, died in Weiser. April 7, '45, the respondent employer, as required by sec. 43-1801, I.C.A., caused to be filled out

the "Employer's Notice of Death of Employee", stating in effect that Ray Walters was working for the respondent employer as city electrician and, while so working, an accident occurred; the report was filed with the Industrial Accident Board April 10, '45. June 12, 1945, hearing was had before the Board. July 2d the Board made its findings of fact and rulings of law and entered an order denying compensation to the claimant (appellant herein) and dismissing her petition, from which claimant has appealed to this court.

The facts in this case are undisputed and are in general as follows:

Mr. Walters was a husky young man of 32, who, prior to his last illness, had always enjoyed good health. In 1936, when examined for life insurance, he had been advised by a physician that he had a slight leakage of the heart but was passed for the insurance. In the fall of 1944, while hunting with a friend, Walters told the friend that he had heart trouble and was unable to keep up the pace of hill-climbing that the other man was setting.

For about three years prior to 1945, Ray Walters had been employed by respondent, City of Weiser, first as an electrician's helper, and later as electrician. His duties, among others, as city electrician, were to "do any electric work, climb poles, top trees, string new lines on power poles and when limbs of trees are in close proximity to live wires to saw off those limbs." The month of January was about the season of the year when the city trimmed its trees. Walters' salary was $145.00 per month.

New Years day, 1945, Mr. Walters "caught cold" and "got the flu", but he kept going; "he didn't feel good, and he wasn't eating as usual and he complained about being tired all the time . . . his complexion was a yellowish color and he was puffy under the eyes." January 10th he went to work and worked until about 11 a.m. Between 8 and 11 that morning, Walters had climbed a tree and cut off a limb which was hanging over the wires; after cutting the tree he put the wires back. Thereafter he went into the superintendent's office and sat down by the radiator, complaining about feeling cold and the superintendent sent him home. The superintendent testified that, when Walters sat down and complained of being cold, it was the first time

he'd heard him complain. "The man didn't look nearly as well as when he went out that morning. . . . He looked like he should be sent home."

After going home January 10th, Walters was quite sick and very tired. Dr. McGrath was called and made an examination; he found that Walters "had a rather slow pulse. . . . He had quite a bit of difficulty breathing. He complained of some discomfort in his chest, weakness, and very tired." Walters "stayed in bed until, . . . around six-thirty or seven in the evening"; then got up, had some soup and attended a meeting of the fireman's association, of which he was an officer. That night he "was wakeful and restless"; the next morning he couldn't eat his breakfast and "went back to bed"; Friday morning "he got up about seven o'clock" and "got so sick he didn't think he was going to make it back to bed . . . didn't eat any breakfast". Around five that evening they got a nurse and applied oxygen. Saturday morning, January 13th, another nurse came who remained with Walters until that afternoon, when he passed away. According to Dr. McGrath, who attended Mr. Walters, the cause of death was given as "Rheumatic heart disease with heart failure"; "rheumatic heart disease, complicated by influenza. . . . " In answer to the hypothetical question, purporting to include all the facts, the doctor answered, that it was his opinion that Walters' "working while ill with influenza was a contributing factor in his death." Mr. Oros, counsel for respondents, asked:

"In other words, any activity along with this disease and the damaged heart probably could have killed him? A. Yes."

Appellant makes seven assignments of error on the part of the Board. They may all be treated together, since the gist of all is, that the Board erred in refusing to rule that Mr. Walters died from an injury resulting from an accident arising out of and in the course of his employment.

We believe it would clarify matters to consider, instead of the several assignments of error, the positions taken by appellant and respondents, respectively.

Appellant takes the position that the facts show that Walters, weakened by heart trouble and ten days of flu, died January 13th, '45, as a result of an accident occurring the morning of January 10th, while climbing a pole to cut

down a branch; that the over-exertion, in climbing and sawing, constituted the accident; and the injury was what this act did to Mr. Walters' already enfeebled condition. On this basis of interpretation, the appellant contends that the case comes within the rule "that where a weakened, abnormal or diseased condition of a workman is aggravated and accelerated by accidental injury arising out of and in the course of employment, compensation must be paid for his resulting incapacity or death".

The respondents' position is, that the facts, all of which were presented by the appellant, except for what respondents brought out on cross-examination, show clearly that Mr. Walters, with a weak heart, caught the flu January 1st and, from that day on until the day of his death, he was suffering from a weakened heart complicated by influenza; and that death came as a result of this. That there was no showing of any accident January 10th or any other day; that the work Walters did between January first and January 10th probably hastened his death, only in the sense that any activity, strain, or emotional difficulty would naturally place a greater burden on his heart. On these facts, respondents maintain the case falls within the rule, that there must be some untoward event, some act, or series of acts, constituting an accident and causing a definite injury before there is any ground for compensation.

The Industrial Accident Board denied appellant's claim, upon the theory that there was no evidence of an accident and that there was affirmative evidence, to the effect that "the death of Ray Walters was due to a disease, namely, rheumatic heart disease, complicated by influenza".

Dr. McGrath, the attending physician and only expert witness, testified at one place on direct examination:

"Q. What, in your opinion, was the cause of his death?

A. I think that it was rheumatic heart disease, complicated by influenza.

Q. Have you an opinion as to whether or not there was any contributing or accelerating cause to this primary cause of death?

A. I believe his work while he was ill with influenza was a contributing factor to his death."

In answer to a long hypothetical question asked by appellant, which question concluded as follows:

" . . . will you state whether or not you have an opinion as to the contributing and accelerating cause of this man's condition which precipitated in his death by heart failure on the afternoon of January 13, 1945", to which he answered:

"A. It is my opinion his working while ill with influenza was a contributing factor in his death."

On redirect examination the Doctor was asked:

"In other words, any activity along with this disease and the damaged heart probably could have killed him? A. Yes."

Again on cross-examination, the doctor testified as follows:

"Q. Doctor, you do not know the cause of this man's death other than his having rheumatic fever and a mitral murmur?

A. And influenza.

Q. And influenza? A. Yes.

Q. He never gave you any history of any accident, did he?

A. No."

The gist of this testimony seems clearly in harmony with the findings of the Board. The testimony of the doctor and Mrs. Walters bears out, with no contradictions, that death resulted from a weakened heart condition, complicated by ten days of influenza during which time Mr. Walters continued work. There is no evidence whatever submitted by the appellant, to the effect that there was any *accident* except for the statement contained in the "Employer's Notice of Death of Employee"; and the testimony of Mr. Kramer, who filed the notice, shows that he had no personal knowledge that this was an accident.

Appellant relies, apparently, on the theory that work, which kills an already sick man, constitutes an accident. Hard work is not an accident (*Bishop v. Morrison-*

*Knudsen Co.*, 64 Ida. 806, 813, 137 P. (2d) 963) ; "it may augment or accelerate the injurious results of an accident." There must be some untoward, unforeseen and unexpected event causing injury in order to constitute an accident. *Sonson v. Arbogast,* 60 Ida. 582, 94 P. (2d) 672.

Appellant cites and relies strongly on *Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 41 P. (2d) 605, 97 A.L.R. 1399, to support the contention that this hard work or overexertion constitutes an accident. That case, however, is distinguishable from the case at bar. In the Beaver case, the workman, with a history of healed tuberculosis, was working at times for his employer, where he had to breathe dust made up of about 80% to 85% silica; and this caused a "flareup" of tuberculosis from which he died. In other words, the work required by him was such that it aggravated his condition in a manner entirely unforeseen and unexpected; and the court held it was an accident, even though the exact time and place of the accident could not be determined. It is not necessary, we said in that case, that the accident be one single event; it may be a series of events.

The same is true with respect to the *Hanson v. Independent School District* case (50 Ida. 81, 294 P. 513), in which we held that, where a man, whose work was regularly lifting heavy weights, gradually weakens his heart and then *overstrains* and dies, it is an accident.

█ The theory, in both *Beaver v. Morrison* and *Hanson v. Independent School District,* supra, is simply that, where the nature the work required of an employee is such that a workman, either in normal health or with some latent weakness over a period of time, injures himself in an unforeseen and unexpected way; and some final act causes the flare-up or blow-up that brings about the outward evidence of an injury, caused by a single untoward event or a series of untoward events; then it can be said that it was an injury resulting from an accident and, if done in the course of and arising out of his employment, it is a compensable accident, within the meaning of our Workmen's Compensation Law.

In the case at bar no such situation arises. There is no connection shown or even argued, between the heart and influenza condition of Mr. Walters and the type of work he was doing. The heart condition was first known in 1936

when he applied for life insurance and in 1944 he mentioned this fact while hunting with a friend. The influenza infection came on New Years day, '45, and no connection was shown or argued as existing between this condition and the type of work or activity of the workman. The work that Walters did from January first until January 10th, when he went to bed, was not shown to have been out of the general line of his usual duties; nor was there any showing that anything was done January 10th out of the usual line of his work.

Orville Webb, an employee of respondent's street department, said, with respect to the activities of the deceased on the morning of January 10th, 1945:

"Q. What did he do that morning?

A. Well he—the Street department was pruning trees and where there is an electric wire in the way, why the electrician takes the wires down so that we can cut the limbs, and Ray came up there and took the wire down so that we could cut the limb off the tree without breaking the wire, and there was another limb on the trees which our ladder wouldn't reach, and he came over where we were working and he had his climbers on and we asked him if he would climb the tree and saw this limb off, and he said, I don't know whether I want to go up there today or not, and I said maybe I could get a rope and throw over the limb and shin up and saw it off. [Some argument over conversation here]

A. [resumed] So Ray climbed the tree and sawed the limb off.

Q. How large a limb was it.

A. Well I don't know, — there was two of them, and I believe we sawed the first one off and this one, he sawed...

Q. Then did he get down from the tree?

A. Yes, then he came down. . . . . .

Q. Did he do any further work at that time?

A. He put the wires back upon the pole before he left."

On Cross examination he testified as follows:

"Q. .... during the time you worked with Mr. Walters, what were his duties?

A. First assistant electrician, and then electrician.

Q. And in the course of those duties, did he have occasion to prune trees?

A. Yes.

Q. Did he do that quite often?

A. Yes.

Q. That was the usual thing he was employed to do along with other electrical duties?

A. Yes."

L. W. Johnson, city superintendent for respondent, testified that there was no accident reported to him and that the duties of Mr. Walters were substantially as stated above. He further testified that Walters seemed to be suffering from a cold during the period of January 1st to 10th, and that he was not normal.

Appellant contends that the "Employer's Notice of Death of Employee" introduced in evidence made a prima facie case of death from accidental injury. While, under some circumstances, such evidence standing alone would establish a prima facie case, this is certainly not true where claimant's own witnesses contradict such evidence.

We do not think it necessary to discuss all the cases cited by appellant and respondents. Both prior to and subsequent to the decision in the case of *Sonson v. Arbogast*, 60 Ida. 582, 94 P. (2d) 672, our court has followed the rule laid down on page 584 of that decision, wherein we said:

"In support of appellant's contention that an *accident* occurred in this case from which the injury (or disease) resulted, counsel cite the following cases decided by this court: *Bybee v. Idaho Equity Exchange*, 57 Ida. 396, 65 Pac. (2d) 730; *Wozniak v. Stoner Meat Co.*, 57 Ida. 439, 65 Pac. (2d) 768; *Riley v. Boise City*, 54 Ida. 335, 31 Pac. (2d) 968; *Suren v. Sunshine Min. Co.*, 58 Ida. 101, 70 Pac. (2d) 399.

"A careful analysis of the cases above cited will disclose

that none of them is direct authority for the contention that the attack of streptococcus pneumonia from which appellant suffered was the result of an accident. In each of the cases mentioned there was either some noticeable mishap or fortuitous incident of which the employee was conscious and following which injury resulted; or else there was some sudden or manifest change in the conditions or surroundings under which the employee was working constituting the accident. Here nothing of the kind is shown. The conditions under which Sonson was working were the same throughout the entire period of his employment. He performed his work in the same manner from day to day and was conscious of no mishap, hazard, or fortuitous occurrence nor misadventure to him or on his part. Under such circumstances, to say there was an *accident* would be to distort all definitions of the word and do violence to the common understanding of the language used by the legislature in writing section 43-1809, I. C. A. (See *Moody v. State Highway Dept.*, 56 Ida. 21, 48 Pac. (2d) 1108.)"

■ Mr. Walters, knowing that he had a weak heart, continued to work after catching the flu January first, until he was unable to continue work January 10th. During all this period, from January 1st to late in the morning of January 10th he was quite sick and yet he not only continued his work but also got out of bed the evening of the 10th and attended a meeting of the fire department of which he was an officer. The combined strain of all this activity on his weakened condition was too much and, after going to bed on his return from the meeting, he grew steadily weaker and died. Though one cannot help but admire such courage, we must conclude that, when the facts show so clearly that there was sufficient competent evidence to support the findings, conclusions and order of the Board (*Cain v. C. C. Anderson Co.*, 64 Ida. 389, 133 P. (2d) 723; *Knight v. Younkins*, 61 Ida. 612, 105 P. (2d) 456; *Butler v. Anaconda Copper Min. Co.*, 46 Ida. 326, 268 P. 6), it leaves us no choice but to hold that the Board's order should be affirmed, and it is so ordered.

Budge, Givens, Holden and Miller, JJ., concur.