260 P.2d 398

DUNN v. MORRISON–KNUDSEN CO., Inc.
No. 7947.

Supreme Court of Idaho.
July 7, 1953.

Rehearing Denied Sept. 11, 1953.

Thomas, J., and Porter, C. J., dissented.

Carroll F. Zapp, Boise, and Brown & Peacock, Kellogg, for appellant.

Lyons & Greene, Sandpoint, for respondent.

212

KEETON, Justice.

In a proceeding before the Industrial Accident Board, dependent minor children of deceased, Ralph E. Dunn, were awarded compensation.

At the time of deceased's death he was in the employ of appellant as an iron welder. He was an able bodied man, thirty-four years of age, in good health; and during his lifetime had no known physical weaknesses or imperfections. At the time of his death he was climbing an enclosed ladder to a place where welding was to be done and collapsed. His death was apparently instantaneous. There was no evidence of violence or recent damage, by force or otherwise, to the body. Dr. Wendle, attending physician, conducted a post mortem and attributed the probable cause of death to coronary occlusion. Another physician, Dr. Tyler, expressed the opinion that death was caused by ventricular fibrillation. After a detailed analysis of the testimony, the Board concluded that the exact cause of death was unknown; was probably due to coronary occlusion which occurred quickly and left no mark of violence on the physical structure of the body other than the stoppage of the heart; and found that death was hastened by the character of the work deceased was doing "and while deceased was accustomed to such work as a part of his regular job, it nevertheless was strenuous work which brought on an unexpected cardiac standstill". The Board concluded that death was due to an accident. This conclusion is supported by no fact or facts whatsoever developed by the testimony. Doctors and physicians could not, and did not, determine the cause of death, and their testimony and opinions failed to show there was an accident. So far as the record discloses testimony tending to prove an accident is a vacuum.

The question presented for decision is whether or not the dependents of a person who dies suddenly on the job, from no known or determinable cause, and no accident being shown which resulted in death, are entitled to an award for compensation for such person's death under the Workmen's Compensation Act.

■ Under the provisions of the Act, Sec. 72–201, I.C. and death benefits which result from death caused by accident, Sec. 72–301 I.C., compensation is payable only where there is injury caused by accident. Death to be compensable under the Act must have occurred because of an "injury caused by an accident arising out of and in the course of * * * employment * * *." Sec. 72–1013, I.C. provides:

" 'Injury' or 'personal injury' includes death resulting from injury * * * but is not to be construed as being synonymous with accident. An 'injury' or 'personal injury' to be compensable must be the result of an accident."

Death itself is simply a termination of life. It may happen anywhere or at any time and may be caused by an accident, but without something more than death while on the job being shown, it is not compensable in an industrial accident proceeding.

A detailed examination of the transcript of the evidence produced cannot be construed by inference or otherwise as establishing that there was "an unexpected, undesigned, and unlooked for mishap, or untoward event," connected with the industry causing an injury. Sec. 72–201 I.C.

■ The word "accident" as used in the Act, Sec. 72–201, I.C. refers to the cause of the injury, and an undesigned, unexpected, unlooked for mishap, or untoward event, must first occur and result in injury to give an employee, or in case of his death his dependents, a right to compensation. One performing the usual, ordinary, customary work of the occupation in which he is engaged, even though the work be hard and strenuous, and who suffers a fatal heart attack, not caused by an accident, or who dies on the job from natural or unknown causes, does not suffer death due to injury arising out of and in the course of his employment. Hence the death for which compensation is here claimed, under the circumstances presented, is not compensable.

Similar situations as are here presented were held to be noncompensable in Wade v. Pacific Coast Elevator Co., 64 Idaho 176, 129 P.2d 894; Walters v. City of Weiser, 66 Idaho 615, 164 P.2d 593; Carrie v. Carrie, 73 Idaho 503, 254 P.2d 410; In Swan v. Williamson, 74 Idaho 32, 257 P.2d 552; Pierce v. Phelps Dodge Corporation, 42 Ariz. 436, 26 P.2d 1017; Rowe v. Goldberg Film Delivery Lines, Inc., 50 Ariz. 349, 72 P.2d 432.

■ The burden of proving that an accident occurred, as defined by the Law, is on the claimant. Brooke v. Nolan, 59 Idaho 759, 87 P.2d 470.

The facts presented here do not fall within the class of cases where a pre-existing injury, disease or ailment is suddenly accelerated by an accident or extraordinary or unusual circumstance, happening in the course of employment. Hence cases cited by respondent, In re Larson, 48 Idaho 136, 279 P. 1087; Cook v. Winget, 60 Idaho

561, 94 P.2d 676; Bishop v. Morrison-Knudsen Co., 64 Idaho 806, 137 P.2d 963; Smith v. Sunshine Mining Co., 72 Idaho 8, 236 P.2d 87; Teater v. Dairymen's Co-op. Creamery, 68 Idaho 152, 190 P.2d 687 are not authority in conflict with the conclusion here reached.

We conclude that the order of the Board awarding compensation should be reversed and set aside, and the proceeding dismissed, and it is so ordered. Costs to appellant.

GIVENS and TAYLOR, JJ., concur.

THOMAS, Justice (dissenting).

In order to set forth in a proper light my reasons for dissenting, it is deemed advisable to add to the statement in the majority opinion in so far as some particular facts seem important.

Decedent was employed as an iron welder and had been thus engaged from April 12, 1951 to July 23rd, the same year, in connection with the construction of the Cabinet Gorge Dam on the Clarks Fork River. On the particular day, decedent was climbing a ladder on the head tower which was 125 feet high; the ladder rungs were 14″ to 16″ apart and made of 2 x 4s; the ladder was enclosed on the sides and back and was almost perpendicular; the construction of this tower, as well as the tail tower, was completed in June; decedent had previously done welding on the concrete mixing plant which was 80′ high and also on the cement silo which was 50′ in height, in each instance climbing to the top by the use of such a ladder; about one-half of decedent's work required him to climb such ladders.

At about 9:30 a. m. on the morning of decedent's death, he climbed the ladder, carrying two lugs tied with a string and thrown over his shoulder, and was followed by two other workmen to a height of 40′ where he stopped for a breather and the other workmen, reaching such height, likewise stopped and rested; thereafter decedent continued climbing the ladder followed by the other two workmen, each separated a few feet from the other; when decedent had reached a height of 95′ he collapsed and, in falling, was caught by the fellow employee below him and held until he could be lowered to the ground. From all that appears in the record, death was instantaneous. The fall occurred at 10:00 a. m., some one-half hour after the climb commenced. The period of 30 minutes, exclusive of the time taken out for the rest at the 40′ level, the time of which rest period is not disclosed, was consumed in the effort and exertion of climbing a distance of 95′ on a ladder which was almost perpendicular, by hand over hand method.

The Board, after making some preliminary findings, stated that there was but one issue in the case and that was whether decedent's death was due to an accident arising out of his employment. With this observation I am in full accord. The Board then, after making findings with reference to decedent's personal characteristics, oc-

cupational background and medical history and other related matter including the circumstances surrounding the death, made the following additional findings:

"The Board finds that Dunn's death was instantaneous; that from the standpoint of medical certainty the exact cause of death is unknown, but that it probably was due to coronary occlusion, which occurred so quickly that it left no mark of violence upon the physical structure of the body other than the stoppage of the heart; that death was hastened by the character of the work decedent was at that time performing, namely, climbing a high ladder with two lugs thrown over his shoulder. While decedent was accustomed to such work as a part of his regular job, it nevertheless was strenuous work and it was routine for him and fellow workers while so engaged to stop at intervals to rest and catch their breath. That decedent had some slight evidence of previous damage to his heart and some enlargement of the left ventricle due to his previous hard labor, which combined with the exertion involved on the first climb of the day brought on an unexpected cardiac standstill."

"The Board finds as an ultimate fact and rules as a matter of law that Dunn's death was due to an accident arising out of and in the course of his employment by defendant."

Conceding, although it is very doubtful, that there is a conflict in the medical testimony that the exertion in climbing the ladder to a height of 95' served to aggravate or accelerate a pre-existing weakened heart condition thereby bringing about and precipitating a coronary occlusion, such conflict was resolved by the Board. All the doctors testified that considerable effort, strain and energy would be involved and required to climb the ladder such a distance; the doctor for appellant was of the opinion that such strain would not be too severe for the decedent who was accustomed to such climbing even though he had a diseased heart. The doctors for claimant expressed their opinion that the precipitating causal factor of the sudden death was the exertion necessarily employed. For our purposes the finding of the Board that death was hastened by the character of the work decedent was performing and that the pre-existing condition of the heart, together with the exertion involved, brought about an unexpected event, that is, a cardiac standstill, is a fact.

Under the Constitution, Art. 5, Sec. 9, this court is limited to a review of the questions of law. Moreover, this court is committed to the rule of liberal construction of the Workmen's Compensation Law, a mandate to this court by the legislature, In re Smith, 72 Idaho 8, 236 P.2d 87; furthermore, the facts as found by the Board and the sufficiency thereof are likewise to be liberally construed, Bishop v. Morrison-

216

Knudsen Co., 64 Idaho 806, 137 P.2d 963; Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267; additionally, this court must give such findings their maximum weight and must not disturb either the findings or conclusions of the Board when supported by competent and substantial evidence. In re Smith, supra.

At this point it may be proper to again call attention to the specific finding of the Board that while the exact cause of death was unknown it was probably due to coronary occlusion; this finding is sufficient as a finding of fact as it is not necessary that the exact cause of death be found. McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068; hence, for the purposes of this appeal death was due to a coronary occlusion, not "from no known or determinable cause" as indicated in the majority opinion.

I do not agree with the majority opinion as therein expressed that "The question presented for decision is whether or not the dependents of a person who dies suddenly on the job, from no known or determinable cause, and no accident being shown which resulted in death, are entitled to an award for compensation for such person's death under the Workmen's Compensation Act." That is not the question. The Board recognized the question in its findings and that is whether decedent's death was due to an accident arising out of his employment.

The Workmen's Compensation Act of this state was enacted in 1917; as originally enacted it did not define the term "accident" nor the terms "injury" and "personal injury". 1917 Sess.Laws, Ch. 81, sec. 4, p. 252 (now 72–201, I.C., as amended in 1939). I will later discuss the amendment of 1939.

Prior to the 1939 amendment, this court was called upon to, and did, define the word "accident".

As early as 1927 the legislature declared that an "injury" was not to be construed as being synonymous with "accident". 72–1013, I.C. This court has had no difficulty throughout the history of the Act to note, and it has noted, such distinction. See In re Larson, 48 Idaho 136, 279 P. 1087.

In the case of McNeil v. Panhandle Lumber Co., supra, the claimant, an exceptionally strong logger, accustomed to and in his regular employment doing strenuous work, lifting and handling heavy logs, suffered a detached retina. This court held that the injury was the result of an accident and that the word "accident" as used in the Act, though not at that time defined therein, was employed in its popular and ordinary sense and denoted an unlooked for mishap or an untoward event which is not expected or designed. The court was urged to accept the narrow and unrealistic view of the meaning of the word "accident" but rejected such definition and expressly adopted the broad, liberal view earlier announced by many courts.

In the case of Butler v. Anaconda Copper Min. Co., 46 Idaho 326, 268 P. 6, decedent's death was caused from the rupture of an artery due to an unusual strain in lifting a wagon box, and the court recognized and applied the definition of an "accident" as announced in the McNeil case, supra.

In the case of In re Larson, 48 Idaho 136, 279 P. 1087, 1090, decided in 1929, decedent had been doing some lifting involving no unusual strain and soon thereafter, in attempting to put a burr on a bolt, experienced severe chest pains. The *strain* accelerated or aggravated a pre-existing latent defect (aneurism), causing death. There again the court recognized the definition of "accident" as previously set forth and observed that it was clear from the record that the latent physical defect was accelerated or aggravated and progressed further, causing death as the result of work decedent was performing. The court made this pertinent statement: *"The strain may not have been unusual, and even slight, but, if it caused the death of the deceased, it was an accident that is compensable."* (Emphasis supplied.)

In the case of Hanson v. Independent School Dist. 11–J, 50 Idaho 81, 294 P. 513, the bus driver, a strong able-bodied man, was driving a school bus over rough ground thereby precipitating a chronic appendicitis into a condition which caused the appendix to rupture. The court announced that where an accident proximately causes an injury, compensation must be awarded even though the injury would not have resulted except for a previous diseased condition.

In the case of Fealka v. Federal Min., etc., Co., 53 Idaho 362, 24 P.2d 325, the claimant contended that the strain in pushing a heavy ore car causing a cerebral hemorrhage resulting in death constituted an accident while the respondent contended that the death, though by cerebral hemorrhage, was natural. This court, applying the rule in the Larson case held that the death was compensable.

In the case of Beaver v. Morrison-Knudson Co., 55 Idaho 275, 41 P.2d 605, 613, 97 A.L.R. 1399, a latent tubercular condition of the workman was lighted up by inhaling silica dust and death followed. It was contended that there was no accident; however, this court on appeal reversed the judgment of the court below denying compensation and, in doing so, made this pertinent and appropriate statement:

"We are not unmindful of the fact that the words 'injury' and 'accident' are not synonymous terms as used in the statute under consideration. The facts of this case require a recognition of the distinction in meaning of these two terms. In the circumstances confronting us here, it is not thought essential to a decision of the case that the court assert or attempt to decide just when and where the injury and result both merged into a consummated 'accident.' In re Larson, 48 Idaho

136, 279 P. 1087, and cases cited. All accidents are preceded by a cause; in some cases that cause may have operated · instantaneously, and in others it may have been operating for days, months, or years; and, ultimately the 'accident' occurs, the 'blow out' (or 'blow up'), happens. A workman works on a given job for years where he regularly has to lift a considerable weight; in the course of time his heart grows weaker and eventually he lifts a similar load and his heart fails and he dies; and the experts tell us that he overstrained himself in lifting the load, and we ·say it was an accident arising out of his employment. In re Larson, supra. Or it may impair or rupture some other part of the body so that the final effort at labor accomplishes the breakdown, and still we say it was an 'accident.' Hanson v. Independent School District 11–J, 50 Idaho 81, 294 P. 513. How different are such cases in principle from the one under consideration here?"

The question is equally appropriate and important in the instant case and the answer, unless this court is going to overrule these landmark cases and many others of this court and chart a new course, should be the same. There have been no legislative amendments which can support such a departure, as will be later shown.

In the case of In re Soran, 57 Idaho 483, 67 P.2d 906, the evidence disclosed that the deceased employee had a defective · heart at the time his back was injured from the strain of lifting, and that the back injury aggravated the pre-existing defective heart condition, subsequently causing death. In awarding compensation, the court held that a pre-existing faulty condition of the employee's heart would not defeat compensation for his death through aggravation of such condition which he sustained from a strain of lifting.

In the case of Evans v. Cavanagh, 58 Idaho 324, 73 P.2d 83, deceased's death resulted from a ruptured aneurism due to increased blood pressure caused from boring five holes through heavy timbers with a brace and $5/8''$ bit, consuming a period of approximately 20 minutes. This court, among other things, recognized that the decedent received an injury caused by an accident arising out of and in the course of his employment.

In 1939, Sec. 72–201, I.C., was for the first and only time amended. In the amendment, among other things, the Legislature for the first time defined the word "accident". It is therein defined as follows:

"'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where

it occurred, causing an injury, as defined in this law."

I mention this because the decisions hereinabove analyzed were decided prior to the amendment.

The first case construing the import and effect of this amendment was Pinson v. Minidoka Highway District, 61 Idaho 731, 106 P.2d 1020, 1023, in which the court had this to say:

"The amendment of I.C.A. section 43–1001 [now 72–201, I.C.] contained in chapter 161, section 1, 1939 Session Laws does not alter the conclusion to be reached. The amendment contains a defintion of 'accident' as follows: [Quoting the above definition]

"The forepart of this definition includes nothing not essential to an accident under the earlier decisions of this court heretofore referred to. In other words, the definition of an 'accident' as defined by this court in former decisions was adopted by the legislature as its definition of an 'accident'. * * *"

In the Pinson case, the workman ruptured a blood vessel through efforts to remove a drill which was stuck. He died at his home a week later. The Board awarded compensation and this court affirmed the award. On appeal, it was contended there was no finding the injury was caused by an accident. The Board found as follows:

"That the stroke with which the said Pinson was suffering as above stated, was the result of his lifting and straining on the drill which had become stuck in the hole as above stated, and was a personal injury by accident arising out of and in the course of his employment."

This court, in holding that such finding was sufficient to constitute a finding of an accident, observed that the finding followed other findings which detailed the events as they had taken place and stated that it was unnecessary to distinguish a difference in meaning between saying decedent "received a personal injury caused by an accident" and that he received "a personal injury by accident", and in this respect concluded that the Act should not be construed to defeat its very purpose by such a critical construction as was there urged and now applied in the majority opinion.

In the case of Aranguena v. Triumph Min. Co., 63 Idaho 769, 126 P.2d 17, decedent, an able-bodied man, strong and robust, with an especially good record of sustained employment, suddenly died one evening in a mine after four hours of work operating and braking a clutch which required about 25 to 30 pounds of pressure. Decedent had a diseased heart. The air was quite warm and deficient in oxygen and the ventilation was not good; death, as the Board found, was caused by a thrombosis of the coronary artery and that the disease was not caused, aggravated or

accelerated by the work he was doing on the particular evening. This court analyzed the evidence and, on disagreeing with the Board, held that the death caused by coronary thrombosis, under exertion while working in a mine under bad air and ventilation conditions at that time, so accelerated and aggravated the thrombosis as to constitute a compensable accident.

In the case of Cain v. C. C. Anderson Co., 64 Idaho 389, 133 P.2d 723, 732, the employee assisted three fellow employees in lifting a piano and moving it into the home of the purchaser; this type of work was not usual for him at that time; about an hour and a half later, while at home, he collapsed; he died of coronary occlusion. On appeal, it was urged there was no accident. The Board found in this respect "that the lifting and moving of the piano * * * as above described, increased the blood pressure of the said Donald E. Cain and *was a factor in precipitating the coronary occlusion which caused his death,* and that the said accident arose out of and in the course of his employment * * *." An autopsy was performed which disclosed no dead tissue or any damage to heart muscles but disclosed an advanced arteriosclerotic thickening in the aorta and a great many atheromatous plaques, also a small thrombus in the left coronary artery. This court affirmed the order of the Board and held that the employee's death caused by heart trouble, precipitated, accelerated or aggravated by moving the piano, was an accident and was compensable even though he suffered from a serious heart ailment predisposing him to coronary occlusion from which he might or could have died within a week or year.

In 1948 this court considered and passed upon the same question as presented in this appeal in the case of Teater v. Dairymen's Cooperative Creamery, 68 Idaho 152, 190 P.2d 687. Briefly, a truck driver who had a previous coronary occlusion which kept him from work returned to his employment after having remained home some time under a doctor's care and within 10 minutes after commencing work died of a coronary occlusion. During the 10-minute period he dragged five 5-gallon packers of ice cream, each weighing 60 to 80 pounds, a distance of 64 feet. Each can had metal gliders on the bottom. He then mounted the truck to the top of the empty cans standing thereon. Another employee tossed the filled cans up and decedent upended and lifted each can 6 to 8 inches; he then got down from the truck and complained of pains and appeared sick and weak; he went to the left side of the truck, climbed into the cab, and within a few minutes died. The work he was doing was usual and customary work. There was no autopsy. The Board found, based upon medical testimony, that death was caused by a coronary thrombosis but also that death was not caused or accelerated, and the disease of the heart was not ag-

gravated, increased or accelerated, as the result of any unexpected, undesigned, or unlooked for mishap and denied compensation. Upon an analysis of the medical testimony of five doctors, this court determined as a matter of law that there was no substantial dispute or conflict that the work decedent was doing at the time and the attendant exertion and strain caused and accelerated and aggravated such diseased condition of the heart, thereby precipitating a coronary occlusion causing death, and, in reliance upon the case of In re Larson, supra, held that death resulted from an accident arising out of and in the course of the employment of decedent.

The Teater case was followed by the case of Warlick v. Driscoll, 68 Idaho 552, 200 P.2d 1014, wherein deceased at the time of death was engaged in lifting and unloading several truck loads of sacked grain, each sack weighing about 135 pounds. He had a diseased heart though there was no autopsy. There was evidence that the exertion incidental to the work accelerated or aggravated the diseased condition of the heart thereby precipitating coronary occlusion, causing death. The Board found death was caused by a coronary occlusion and decedent received a personal injury caused by an accident arising out of and in the course of his employment, the effects of which accelerated the event of and caused the death. This court again, in reliance on the Larson and the Teater cases, held that the evidence justified the award on the ground that the death from the heart attack was caused by an accident.

In 1951 this court had before it another heart case, In re Smith, 72 Idaho 8, 236 P.2d 87, 89. Decedent worked in a mine. He died suddenly on the job from a heart attack (coronary occlusion). The Board found that the attack was primarily due to heart strain occasioned by physical exertion in doing normal work in the mine, together with added stress to fill the average quota of cars to be trammed on one shift and the additional stress of righting a car which had upended about an hour before his death. The Board concluded that the tipping of the car was an accident which in some degree resulted in death and awarded compensation. There, as here, it was contended that there was no accident. This court stated with respect to the accident aspect as follows:

"Whether the tipping and righting of the car is to be regarded as the 'accident' or whether the heart strain in righting the car is taken to be the 'accident' we do not regard as a matter of decisive importance. Certainly the resulting heart strain under the circumstances would be an unexpected, undesigned, and unlooked for mishap. It is the causal connection between the accident and the injury, in this

case the death, that is controlling. As stated, the Board found that the exertion in righting the car was a contributing factor to the heart strain."

This court affirmed the award of compensation for death for coronary occlusion because there was substantial evidence that the exertion in righting the car was the probable cause of the heart strain and resulting death.

This court has repeatedly recognized that a pre-existing disease or infirmity which is aggravated or accelerated in combination with the strain employed, thereby producing death or disability, is compensable. In such a situation the employer takes the employee as he finds him. Among the common examples of the acceleration of a disease through strain are the various cases of heart failure due to exertion.

The basic and indispensable factor of an accident is its unexpectedness. The greatest source of controversy in this field lies in the usual exertion as contra-distinguished from the unusual exertion theory. In this jurisdiction, we have awarded compensation when the usual exertion leads to a detachment of the retina, McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068; in the rupture of an aneurism of the aorta due to boring holes in timbers, Evans v. Cavanagh, 58 Idaho 324, 73 P.2d 83; straining to loosen a drill which was stuck, Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020; in the rupture of a blood vessel from pushing a mine car, Fealka v. Federal Min., etc., Co., 53 Idaho 362, 24 P.2d 325; hernia, in the cases of Butler v. Anaconda Copper Min. Co., 46 Idaho 326, 268 P. 6 and Hieronymus v. Stone's Food Stores, Inc., 60 Idaho 727, 96 P.2d 435; also an aneurism, In re Larson, 48 Idaho 136, 279 P. 1087. Again this court has accepted the usual exertion rule as leading to accidental injury that involves a coronary thrombosis or occlusion. Teater v. Dairymen's Cooperative Creamery, 68 Idaho 152, 190 P.2d 687; Warlick v. Driscoll, 68 Idaho 552, 200 P.2d 1014. We have also held that under usual conditions of employment which lead claimant to suffer frostbite, the injury is accidental. Riley v. Boise City, 54 Idaho 335, 31 P.2d 968. Moreover, death from coronary occlusion induced by emotional and nervous shock and strain, without physical contact, immediately following an electrical explosion is compensable. Roberts v. Dredge Fund, 71 Idaho 380, 232 P.2d 975.

It would appear that the decisions in this state until now have stood for the proposition that an accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of his health. This is the ruling in the Larson case.

Strictly speaking, as a matter of medical causation the only question is the ability of the particular strain to affect the particular

diseased heart; the character of the decedent's previous exertions is much less relevant on this matter than the direct medical question whether given this heart and this exertion the exertion in fact contributed to the collapse; it is the causal connection between the accident and the injury, in this case the death, which controls. The Board found that the exertion in climbing the ladder was a contributing factor to the heart strain. See In re Smith, 72 Idaho 8, 236 P.2d 87.

In some states, but not in Idaho, as I understand, the rule appears to be that if one were previously in good health and suffers a heart attack from routine exertion, that is, usual exertion, it is an accident, and if, on the other hand, one had a pre-existing weakness he must show an unusual strain to establish an accident. It is clear that any such distinction goes primarily to proof of causation rather than of accident. Without exception, it would be easier to prove causal connection when the industrial strain has no known predisposing disease as a competitor as a possible cause. But where a jurisdiction has accepted the proposition that precipitation of a pre-existing diseased condition satisfied the causal requirment, as Idaho has, does not the difference become only one of degree of difficulty of proof?

Though it is not necessary to decide, it would seem reasonable that a fatal heart attack is more unexpected when the victim enjoyed, so far as he knew, previous good health than when he did not. No worker expects a fatal collapse as the result of a particular exertion even including those who unfortunately have a weak heart.

Even though the natural progress of a diseased heart may bring it to a climax without any work, labor or exertion, that is of no moment. If it is brought about while working and the employee by a miscalculation of his own strength because of a weakened condition inadvertently hastens his own death by exertion which causes the fatal breakdown, it is an accident in most jurisdictions and was in Idaho prior to the majority opinion herein.

Cases are legion in which the courts have sustained an award for compensation for death caused by a coronary occlusion under facts similar to those in this case. I will cite a few of the more recent cases in this field. Donlan's Case, 317 Mass. 291, 58 N.E.2d 4; Yawdoshak v. Somerville Iron Works 20 N.J.Misc. 412, 28 A.2d 478; Eisen v. Jacquard Fabrics, 19 N.J.Misc. 526, 21 A.2d 614; Amend v. Amend, 12 N.J.Super. 425, 79 A.2d 742; Juhl v. Hussman-Ligonier Co., Mo.App., 146 S.W.2d 106; Simon v. Village of Plainview, Minn., 54 N.W.2d 32; Southern Underwriters v. Hoopes, Tex.Civ.App., 120 S.W.2d 924; Jones v. California Packing Corp., Utah, 244 P.2d 640; Bussey v. Globe Indemnity Co., 81 Ga. 401, 59 S.E.2d 34; see also

Workmen's Compensation Text, Schneider, Vol. 4, Sec. 1332.

Contrary to the inferences in the majority opinion, death when the result of an accident arising out of and in the course of employment is compensable though death may not occur while on the job.

The majority opinion relies on the cases of Wade v. Pacific Coast Elev. Co., 64 Idaho 176, 129 P.2d 894; Walters v. City of Weiser, 66 Idaho 615, 164 P.2d 593; Carrie v. Carrie, 73 Idaho 503, 254 P.2d 410; In Swan v. Williamson, Idaho, 257 P.2d 552, to support the conclusion that there was no accident.

These cases are readily distinguishable from the instant case and do not support such a proposition. In the Walters case, independent intervening factors were involved. Decedent arose from a sick bed after contracting influenza and attended meetings having nothing to do with his employment. Moreover, the Board found that death was caused by rheumatic heart disease, complicated by influenza, not by accident, and denied compensation. The finding of the Board, supported by the evidence, was not disturbed. The Teater case, the Warlick case and the case of In re Smith were all decided after the Walters case.

In the Wade case the Board denied compensation and this court affirmed its order. There was a conflict in the medical testimony as to whether the strain and exertion aggravated a previously diseased heart and the Board found there was no aggravation, hence no accident. This court, on appeal, was limited to a review of the questions of law and was bound by the facts found where, as was the case, they were supported by the evidence though conflicting.

In the Carrie case the Board made a finding supported by the evidence that at the time of decedent's death he was not engaged in any employment. The Board denied compensation. Under this finding the employee was not then covered by the Act, hence not entitled to compensation even though his death was the result of an accident. Whether or not he received an injury by accident was of no moment unless it arose out of and in the course of his employment. Any matter set forth in the opinion as to what constitutes an accident under the Act is dictum.

In the Swan case there were no facts found which constituted an accident under the Act; the facts found upon conflicting evidence would not support a conclusion which the Board made that death was caused by an accident.

The majority opinion holds that the Larson case and others therein mentioned, including the case of Teater v. Dairymen's Cooperative Creamery, supra, are distinguishable and have no application but does not point out in what respect they are distinguishable. The majority opinion states, but wholly without explanation, that these

cases are not in conflict with the conclusion reached therein. On the contrary, the conclusion reached in the majority opinion overrules those cases as well as the others I have set forth in this dissent. They cannot be reconciled. In the Larson case the court held that a strain, even slight, which causes the death of the decedent is an accident. So far as a I know, this court has never heretofore departed from that rule. In the instant case the Board found that death was hastened by the character of the work decedent was doing and that the previously damaged condition of his heart with the exertion brought on an unexpected cardiac standstill. This finding is well within the pronouncement of the Larson case.

Again, in Beaver v. Morrison-Knudsen Co., supra, and Cain v. C. C. Anderson Co., supra, this court reiterated the principle that the worker who strains himself and his heart fails has experienced an accident arising out of his employment. In the case of Pinson v. Minidoka Highway District, supra, this court held that a finding by the Board that the employee having suffered a stroke as a result of lifting and straining was sufficient to constitute a finding of personal injury by accident.

The order of the Board awarding compensation should be affirmed.

I am authorized to say that Chief Justice PORTER concurs in this dissent.