311 P.2d 976

**Robert H. LEWIS, Claimant-Appellant,**

**v.**

**DEPARTMENT OF LAW ENFORCEMENT, State of Idaho, Employer,**

**and**

**State Insurance Fund, Surety, Respondents.**

**No. 8516.**

Supreme Court of Idaho.

April 26, 1957.

Rehearing Denied June 17, 1957.

Black, Black & Oliver, Pocatello, for appellant.

Graydon W. Smith, Atty. Gen., Glenn A. Coughlan, Asst. Atty. Gen., for respondents.

PORTER, Justice.

On June 15, 1954, and for seven years prior thereto, appellant was a state policeman employed by the State Department of Law Enforcement and stationed in the vicinity of Idaho Falls. On the date in question, he was attending the annual state convention of the Idaho Peace Officers at McCall, Idaho. It was part of his duty as a state policeman to attend this convention and to participate in its activities.

Among other activities, such state convention conducts competitive pistol shooting on a pistol range. The firing course consists of shooting eighty rounds from various stations and from prone, sitting and standing positions. Generally, five rounds are fired from a station and then the contestant runs to another station and commences the firing of another five rounds. There is some interval between the firing from each station and to complete the entire course requires about one hour. Other contestants are also firing at the same time on the pistol range. The firing on the pistol range is highly competitive and the

results of such firing affects the standing and record in the service of the contestant.

On the day in question, appellant had fired the Camp Perry Course of thirty shots and had fired twenty-six shots on the Practical Pistol Course. Upon firing the twenty-seventh shot he could not hear whether the shell fired or not and inquired of his coach as to whether the shot was fired. He then fired five more shots and fell to the ground. He blacked out for a minute but did not remain unconscious and complained of a severe headache. He was taken to McCall and a physician examined him. He was then sent to the hospital in Cascade, then to a hospital in Boise and later removed to a hospital in Salt Lake City.

It was determined by his attending physicians that appellant was afflicted with a congenital aneurysm of the left intracranial carotid artery. The stroke which appellant suffered on the pistol range was the result of the rupture of and bleeding from such aneurysm. Appellant was given treatment by the attending physicians which treatment included an operation. Appellant has suffered permanent injuries including a partial paralysis of his limbs on the right side.

Appellant duly made application for an award of compensation under the Workmen's Compensation Act. Hearings were had at McCall and Idaho Falls and the depositions taken of the attending physicians in Salt Lake City. The Industrial Accident Board found there was no material dispute in the evidence as to the facts and that it was a question of law as to whether or not appellant had suffered an accidental, personal injury compensable under the Workmen's Compensation Law. The Board, as part of its ultimate finding and ruling, found as follows:

> "There can be no doubt that the primary and principal cause of claimant's present disability is the aneurysm of the left carotid artery, a condition which existed for many years and probably from claimant's birth. The artery's rupture on June 15, 1954 while Lewis was firing a revolver in a competitive contest was very likely occasioned by temporarily enhanced blood pressure brought on by the mental and emotional strain in the excitement of the contest and anxiety as to his score. Physical factors probably contributed to some extent, a brief run of 15 yards, the claimant's holding his breath momentarily while actually firing, and the concussion of the shots. * * * The activity or employment in which claimant was engaged was in no sense abnormal; it was in fact, a part of a policeman's routine, a routine in which claimant had been employed for seven and a half years. There was no work accident. Nothing went wrong in the working conditions or in the working equipment or in its use. Claimant's

stroke was not by accident arising out of his employment."

The Board denied an award of compensation and claimant has appealed to this court.

The Workmen's Compensation Law was adopted in 1917. It did not contain a definition of the term "accident." It therefore became necessary for the courts to determine the meaning of the term "accident" as used in the compensation law. This question came before the court in McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068. The Court was considering a claim for loss of sight in the right eye caused by the detachment of the retina resulting from heavy lifting of saw logs. After noting that some authorities hold in effect that there must be evidence of mischance or miscalculation in what was being done or something fortuitous or unexpected in the manner of doing the work to constitute an accident, this court, in rejecting such view, said, 34 Idaho 773, at pages 788–789, 203 P. 1068, at page 1073:

"* * * Much more in harmony with the purpose of such laws is the holding in the English Case of Fenton v. Thorley, supra, [L.R.App.Cas. 433] in which appellant ruptured himself by overexertion in trying to turn a wheel. In the course of the opinion Lord Macnaghten said:

"'Fenton was a man of ordinary health and strength. There was no evidence of any slip, or wrench, or sudden jerk. It may be taken that the injury occurred while the man was engaged in his ordinary work, and in doing or trying to do the very thing which he meant to accomplish. * * *

"'If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him.'"

In Aldrich v. Dole, 43 Idaho 30, 249 P. 87, 88, this court again considered the question and considered the argument that there must be some distinct event or occurrence which taken by itself can be recognized as an accident and then that the injury must be shown to have followed as a consequence from that specific event before the injury is compensable. In adversely disposing of such contention, this court quoted with approval from Associated Employers' Reciprocal v. State Indus. Comm., 88 Okl. 249, 212 P. 604, at page 606, as follows:

"' * * * It is clear from a consideration of these two sections that it was the intention of the law to provide compensation for an injury sustained by an injured employee, while engaged in any of the hazardous oc-

cupations coming within the act, and, if such injury is sustained, it is by the act regarded as an accidental injury, unless excluded for wilful injury, etc., as in the act provided; and there is no language in the act authorizing the conclusion that, as a prerequisite to the right of compensation, the claimant must show that he has suffered some injury resulting from some sudden or violent accident.' "

In the case of In re Larson, 48 Idaho 136, at page 146, 279 P. 1087, at page 1090, this court was considering a death caused by the rupture of a pre-existing aneurysm resulting from heavy labor. The court applied the same test as to what constitutes an accident and said:

"It therefore seems clear that as a result of the work being performed by the deceased, the latent physical defect, the aneurism, was accelerated or aggravated and progressed farther, causing death. The strain may not have been unusual, and even slight, but, if it caused the death of the deceased, it was an accident that is compensable."

The court also said, 48 Idaho 143, 279 P. 1089:

"* * * Conceding the pre-existence of all the latent defects found by the court, the question therefore arises: Is it necessary that a laborer should be in perfect health and physical condition prior to an accident to entitle him to compensation? While there are authorities to the contrary, the weight of authority and the better reasoned cases lay down the rule that, although a laborer may have had an injury or a pre-existing physical weakness which reduces his ability to work below that of a normal man, and be thereby more susceptible to injury, yet if he is able to do some work and is employed, and in the course of his employment receives an injury, he is entitled to an award notwithstanding the former injury."

The decisions in the three foregoing cases develop and apply the following principles: It is unnecessary that the claimant be engaged in some unusual work or that there be a slipping, falling or some sudden or violent accident preceding the injury before it is compensable. If the claimant be engaged in his ordinary, usual work and the strain of such labor becomes sufficient to overcome the resistance of claimant's body and causes an injury, such injury is compensable. And although the claimant was suffering from a pre-existing defect such as an aneurysm, if the strain aggravates and accelerates the condition and causes or contributes to the injury, such injury is compensable.

The foregoing determination of the scope of the term "accident" was adopted and applied in the following cases: Beaver v.

Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399; In re Soran, 57 Idaho 483, 67 P.2d 906; Cook v. Winget, 60 Idaho 561, 94 P.2d 676; Hieronymus v. Stone's Food Stores, Inc., 60 Idaho 727, 96 P.2d 435; Nistad v. Winton Lumber Co., 61 Idaho 1, 99 P.2d 52.

In 1939, for the first time, a definition of the term "accident" was adopted and inserted in the Workmen's Compensation Law as an amendment to Section 72-201, I.C. By such amendment, the term "accident" was defined as follows:

> "'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law."

In Pinson v. Minidoka Highway District, 61 Idaho 731, at page 739, 106 P.2d 1020, at page 1023, decided in 1940, this court took notice of the 1939 amendment of Section 72-201, I.C., by the insertion of a definition of the word "accident" and in this connection, said:

> "The forepart of this definition includes nothing not essential to an accident under the earlier decisions of this court heretofore referred to. In other words the definition of an 'accident' as defined by this court in former decisions was adopted by the legislature as its definition of an 'accident.'"

The court re-defined an accident as follows, 61 Idaho 738, 106 P.2d 1023:

> "Appellants' remaining contention is one that has been heretofore considered by this court on several occasions, appellants urging that there was no accident because the deceased was doing the work he expected to do and in the manner contemplated; that since it is not an unusual occurrence for a drill to become caught or stuck, there can be no 'accident' in the absence of a fall, a slip, or a stumble on the part of the workman or a breakdown on the part of the machinery operated by him. To constitute an 'accident' it is not necessary that the workman slip or fall or that the machinery fail. An 'accident' occurs in doing what the workman habitually does if any unexpected, undesigned, unlooked-for or untoward event or mishap, connected with or growing out of the employment, takes place."

This definition of accident, after the 1939 amendment, was applied and followed in the following cases: Aranguena v. Triumph Mining Co., 63 Idaho 769, 126 P.2d 17; Cain v. C. C. Anderson Co., 64 Idaho 389, 133 P.2d 723; Teater v. Dairymen's Cooperative Creamery, 68 Idaho 152, 190 P.2d 687; Warlick v. Driscoll, 68 Idaho

552, 200 P.2d 1014; and In re Smith, 72 Idaho 8, 236 P.2d 87.

Of course, there must be a causal connection between the strain occasioned by the work being done and the resulting injury. The proof must show that the strain was the cause or a contributing cause of the injury before a recovery can be had. The cases of Wade v. Pacific Coast Elevator Co., 64 Idaho 176, 129 P.2d 894, and Swan v. Williamson, 74 Idaho 32, 257 P.2d 552, are cases in which it was held that the evidence was insufficient to show that the labor being performed was the cause or contributed to the injury.

In Carrie v. Carrie, 73 Idaho 503, 254 P. 2d 410, the court was considering a claim for compensation by a minor due to the death of her father. The Industrial Accident Board found that the cause of decedent's death was coronary thrombosis and further found that at the time of his death he was not actually engaged at work. This was in effect a finding that the work of deceased did not bring on the thrombosis. By way of dictum, this court said, 73 Idaho 505, 254 P.2d 411:

> "Appellant contends that the work being preformed by the deceased was of an arduous, hard nature, and thus brought on the heart attack.
>
> "To constitute an accident within the Workmen's Compensation Act there must be an untoward, unforeseen or unexpected event or series of events causing injury. Hard work, if it was, does not constitute such an accident. Walters v. City of Wieser, 66 Idaho 615, 164 P.2d 593.
>
> "The heart ailment or condition suffered by the deceased was not caused by an industrial accident, nor was there any violence to the physical structure of the body."

This dictum indicates a departure from our prior definition of an industrial accident.

In Dunn v. Morrison-Knudsen Co., 74 Idaho 210, 260 P.2d 398, the deceased was an iron welder. At the time of his death he was engaged in climbing a ladder which was 125 feet high. He was followed up the ladder by two other workmen. At a height of 40 feet they all three stopped and rested. Thereafter they continued climbing the ladder and when decedent had reached a height of 95 feet he collapsed and was caught by his fellow employees and lowered to the ground. Death was instantaneous. This court by a three to two decision denied an award of compensation on the ground that the evidence did not show that the injury resulted from an accident. The findings of the Industrial Accident Board were that the death of the decedent was hastened by the character of the work decedent was at that time preforming, namely, climbing the high ladder, and that some previous damage to his heart combined with the exercise involved in the climbing of the ladder brought on an unexpected cardiac standstill. In the face of

these findings, the majority of the court overruled the award of compensation on the ground that there was no accident and said, 74 Idaho 213, 260 P.2d 399:

> "One performing the usual, ordinary, customary work of the occupation in which he is engaged, even though the work be hard and strenuous, and who suffers a fatal heart attack, not caused by an accident, or who dies on the job from natural or unknown causes, does not suffer death due to injury arising out of and in the course of his employment. Hence the death for which compensation is here claimed, under the circumstances presented, is not compensable."

The late Justice Thomas prepared and filed a comprehensive dissenting opinion with which the writer of this opinion concurred. Justice Thomas reviewed the decisions of the outstanding cases in Idaho and stated his conclusions as follows, 74 Idaho 222, 260 P.2d 405:

> "It would appear that the decisions in this state until now have stood for the proposition that an accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of his health."

It thus appears that the dictum in Carrie v. Carrie, supra, and the decision in Dunn v. Morrison-Knudsen Co., supra, are contrary to the many and consistent decisions of this court over a period of thirty-five years as to what constitutes an industrial accident. It would seem unwise to continue this departure from the many precedents. The Industrial Accident Board apparently in holding that there was no work accident in this case was attempting to conform to the majority opinion in the Dunn v. Morrison-Knudsen Co., case. We are constrained to hold that under the long line of decisions in this state, the evidence in this case shows an industrial accident resulting in a compensable injury.

The order of the Industrial Accident Board denying compensation is reversed and the cause remanded with instructions to enter an order making an award to claimant in an amount to be determined by the Board. Costs awarded to appellant.

TAYLOR, SMITH and McQUADE, JJ., concur.

KEETON, *Chief Justice* (*dissenting*).

In my opinion the holding of the Industrial Accident Board is correct and should be affirmed. The record fails to establish an industrial accident causing an injury. While on cursory reading, prior precedents, on first impression, might be construed as being in conflict, none the less the Board followed authorities established by this Court over a period of years.

Before one can recover under the Workmen's Compensation Law, there must first be an industrial accident causing an injury. The Board found claimant did not suffer

such an accident. The finding is supported by substantial, competent evidence, and under the constitution and many prior precedents the determination made by the Board should be sustained.

The majority opinion can only result in further confusion of case law covering similar situations.

The following authorities sustain the Board's conclusion: Wade v. Pacific Coast Elevator Co., 64 Idaho 176, 129 P.2d 894; Walters v. City of Weiser, 66 Idaho 615, 164 P.2d 593; Carrie v. Carrie, 73 Idaho 503, 254 P.2d 410; Swan v. Williamson, 74 Idaho 32, 257 P.2d 552; Dunn v. Morrison-Knudsen Co., 74 Idaho 210, 260 P. 2d 398. These holdings should not be lightly disregarded.

I would affirm the order.